2019 PA Super 42

| IN RE: ELSIE DELEVIE | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: RAYMOND DELEVIE, | : | |
| M.D. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 660 MDA 2018 |

Appeal from the Order Entered March 22, 2018
In the Court of Common Pleas of Centre County Orphans' Court at No(s):
1417-0339

BEFORE:  LAZARUS, J., OLSON, J., and MUSMANNO, J.

OPINION BY OLSON, J.:  **FILED FEBRUARY 15, 2019**

Appellant, Raymond deLevie, M.D., appeals *pro se* from the order entered on March 22, 2018, removing him and appointing Alvin deLevie (Petitioner), as health care power of attorney for their mother, Elsie deLevie (Mother).  We affirm.

The trial court summarized the facts of this case as follows:

Mother is 96 years old and has resided at Foxdale Retirement Community (Foxdale) since February 27, 2007.  Mother resides in Anthony House at Foxdale, which provides 24 hour skilled nursing care and assistance with daily activities.  Mother has had medical and nursing care provided to her by Foxdale staff including Rodney Selpich, M.D. (Dr. Selpich), the medical director.  Mother appointed [Appellant], who has a medical degree, to be her Health Care Agent and Petitioner to be her Alternative Health Care Agent in a document titled Combined Living Will and Health Care Power of Attorney.

[Appellant] acted as the Health Care Agent during Mother's stay at Foxdale, and attempted to work with the nursing staff and Dr. Selpich.  Following Mother's fall on September 9, 2014, Mother was injured and required the use of a wheelchair and assistance getting in and out of bed and to use the bathroom.  [Appellant]

became increasingly difficult for Foxdale staff to accommodate and work with, and he has intimidated and threatened nursing staff. [Appellant] demanded access to information regarding Mother's call bell records and when Foxdale was slow in providing him this information, he threatened to file a report with regulators. [Appellant] was eventually provided [with] the information but [he] continued to demand more information which Foxdale was not obligated to provide, including notes made by nurses regarding Mother's condition.

The main point of contention between [Appellant] and Foxdale involved the method nurses would use to transfer Mother from her bed to the wheelchair. [Appellant] insisted on the use of a Beasy Board, while Foxdale preferred a Hoyer Hoist. Foxdale informed [Appellant] the hoist was easier and presented less risk to Mother, and was faster and safer for the nurses assisting with the transfer. [Appellant] alleged Foxdale was committing what he termed battery by using the Hoyer Hoist and refused to discuss the use of anything but the Beasy Board.

On March 17, 2017, [Appellant] surreptitiously recorded two nurses transferring Mother out of her bed using the Hoyer Hoist. [Appellant] did not have permission from Foxdale to record the nurses. During a March 22, 2017 phone conference, [Appellant] berated Foxdale staff members and reiterated his assertion Foxdale was committing battery and admitted to recording Foxdale staff using the Hoyer Hoist on Mother. In order to appease [Appellant] and determine the best method for transferring Mother, Foxdale offered to have a neutral third party mediate the dispute. Foxdale suggested Dr. Richard Allatt to see Mother and make a determination whether the Hoyer Hoist was appropriate or if the Beasy Board would be a safer alternative. [Appellant] called Dr. Allatt and spent nearly 25 minutes on the [tele]phone with him and ultimately refused to permit Dr. Allatt to see Mother. Foxdale sent [Appellant] a cease and desist letter on March 24, 2017 asking him to refrain from making any further recordings and to delete the recording he had already made. Petitioner intervened and suggested [Appellant] choose three local physicians who could act as mediators from which Foxdale would choose one to mediate the dispute. [Appellant] refused to provide any names.

On June 19, 2017, Dr. Sepich informed Mother he would not be her healthcare provider effective in thirty days because of

- 2 -

[Appellant's] interference with Dr. Sepich's treatment of Mother. Petitioner filed [a] petition [to remove Appellant and appoint Petitioner as a new Health Care Power of Attorney on June 29, 2017] and [an] associated [p]reliminary [i]njunction to prevent Mother from having to seek medical care outside of Foxdale's onsite staff, which would require transportation to offsite medical providers. Petitioner argue[d that] losing Dr. Sepich's treatment would be deleterious to Mother's health and possibly result in Mother having to move from Foxdale. Foxdale and Dr. Sepich [] stated that they [would] continue to treat Mother if [Appellant was] no longer her Health Care Agent.

Trial Court Opinion, 3/22/2018, at 2-3.

As briefly stated above, Petitioner filed a motion for a preliminary injunction on June 29, 2017. In that motion, "Petitioner request[ed] that [Appellant] be preliminarily enjoined from acting as Health Care Power of Attorney in order to prevent immediate and irreparable harm to [Mother]." Motion for Preliminary Injunction, 6/29/2017, at 3 ¶12. "Petitioner request[ed] that he be granted status as Health Care Power of Attorney for [Mother] pending a hearing" on the petition to remove Appellant. *Id.* at ¶16. On June 29, 2017, the trial court entered an order enjoining Appellant "from acting as Health Care Power of Attorney for [Mother] and [appointing Petitioner] as the Health Care Power of Attorney for [Mother] until further order[.]" Trial Court Order, 6/29/2017, at *1.

The trial court held hearings on the petition to remove Appellant on August 31, 2017 and October 23, 2017. The trial court granted relief by opinion and order entered on March 22, 2018, removing Appellant as Mother's

health care power of attorney and appointing Petitioner in his stead.[1]  This timely appeal resulted.[2]

On appeal, Appellant presents the following issues, *pro se*, for our review:

1. Did the trial court accurately state the procedural history of this case?

2. Did the trial court commit an error of law and deny [Appellant] due process in interpreting 20 Pa.C.S. § 5454(d) when it (1) allowed [P]etitioner to amend his original § 461(e) petition, and (2) immediately revoked [M]other's health care power of attorney?

3. Did the trial court abuse its discretion by granting [P]etitioner's motion for a preliminary injunction, when [P]etitioner failed to prove all of the "essential prerequisites" necessary to obtain such injunctive relief?

4. Did the trial court's findings of fact constitute an abuse of discretion?  E.g. capricious disregard of evidence; lack of evidentiary support; manifestly unreasonable; overriding or misapplication of the 1987 Nursing Home Reform Act, 42 U.S.C. § 1395i-3 (the nursing home Act), and the associated 42 CFR Part 483 regulations, the American Medical Association's Ethical Opinion 1.1.3 recognizing a patient's right to continuity of care, and the Pennsylvania Wiretap Act?

5. Whether the trial court's factual and legal conclusion, that it would not be in [M]other's best interest for [A]ppellant to serve as health care agent, is premature, denied [A]ppellant due process and discovery as to the merits of the § 5461(e) petition

---

[1]  Because the order at issue changed the status of a fiduciary, it was a final order subject to immediate appeal.  ***See*** Pa.R.A.P. 342(a)(5).

[2]   Appellant filed a notice of appeal on April 19, 2018 and complied timely with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  The trial court issued a second opinion pursuant to Pa.R.A.P. 1925(a) on June 7, 2018.

to disqualify, is not supported by "clear evidence," and is erroneous as a matter of law?

6. Whether the trial court's immediate disqualification of [A]ppellant, without notice or a hearing, as [M]other's health care representative, in the future, violates due process?

7. Whether it was an abuse of discretion for the trial court not to reopen the record, to admit into evidence the December 1, 2017 violations report from the Department of Human Services, regarding [M]other's care at Foxdale Village, in light of the court's negative statement in its initial opinion that [A]ppellant "threatened to file a report with regulators[?]"

8. Did the trial court abuse its discretion by (1) curtailing the hearing on October 23, 2017 – without prior notice or explanation – thereby limiting [A]ppellant's testimony, (2) refusing to allow the court reporter to note this curtailment in the transcript, and (3) denying his motion to include, in the record, his affidavit regarding this curtailment[?]

Appellant's Brief at 18-20.

Initially, we note that Appellant's lengthy brief violates our rules of appellate procedure. "A principal [appellate] brief shall not exceed 14,000 words and [a] party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages." Pa.R.A.P. 2135. "The certification requirement is not limited to counsel: *Pro se* litigants, too, are obliged to provide a certification for a primary brief that exceeds thirty pages." ***Commonwealth v. Spuck***, 86 A.3d 870, 873 (Pa. Super. 2014), *citing* Pa.R.A.P. 2135(d) ("[T]he attorney **or the unrepresented filing party** shall include a certification that the brief complies with the word count limits." (emphasis added)). Here, Appellant's brief is 79 pages long, clearly in excess of 14,000 words, and Appellant has failed to file a certificate of compliance

pursuant to Pa.R.A.P. 2135. While we construe *pro se* filings liberally, we remind Appellant that *pro se* litigants must comply substantially with our rules of procedure, as this Court cannot act as counsel. **Spuck**, 86 A.3d at 874. However, in this instance, Appellant's defective brief has not hampered our review and, thus, we will we examine Appellant's claims on their merits. While Appellant presents eight issues for review, we will consolidate and reorganize them when appropriate for ease of discussion and brevity.

Our standard of review is as follows:

> Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law. This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law.

**In re Fiedler**, 132 A.3d 1010, 1018 (Pa. Super. 2016)(internal citations and quotations omitted).

In his first issue presented, Appellant contends that the trial court misstated the procedural history of this case. He claims that the hearings on August 31, 2017 and October 23, 2017 were held on the preliminary injunction, but the trial court was actually considering the petition for

disqualification and removal.  Appellant's Brief at 48-51.  As such, Appellant suggests that he was denied due process of law by being haled into court to defend himself on a basis other than the stated or noticed purpose of the hearing.  *Id.*  Appellant's fifth and sixth issues similarly challenge the trial court's actions as violating his right to due process.  *Id.* at 76.

Initially we note that a hearing regarding the motion for preliminary injunction was simply not required under the law:

> The party seeking an injunction need not prove the merits of the underlying claim, but need only show that substantial legal questions must be resolved to determine the rights of the respective parties.

*          *          *

> The law with respect to hearings and preliminary injunctions is clear. It provides:

>> A court shall issue a preliminary or special injunction only after written notice and hearing unless it appears to the satisfaction of the court that immediate and irreparable harm will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice. In determining whether a preliminary or special injunction should be granted and whether notice or a hearing should be required, the court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require.

> Pa.R.Civ.P. 1531(a).

> A hearing simply is not required under the law.

- 7 -

*Walter v. Stacy*, 837 A.2d 1205, 1209–1210 (Pa. Super. 2003) (internal case citations, quotations, and original emphasis omitted). In this case, the trial court entered an order granting the preliminary injunction on the same day Petitioner requested it. Thus, at the time of the hearings on the petition to remove, the preliminary injunction was already in effect. The only remaining issue before the trial court was whether Appellant be removed and replaced as Mother's health care agent.

Moreover, upon our review of the record, despite the preliminary injunction captions on the cover sheets of the transcribed proceedings, at each of the hearings it was clear that the parties were present to argue the petition to remove. N.T., 8/31/2017, at 4; N.T., 10/23/2017, at 10-11. Counsel for Petitioner noted that there was a preliminary injunction already in effect. N.T., 8/31/2017, at 4. Moreover, at the end of the first proceeding, the trial court scheduled a second hearing, but stated on the record that "[t]he injunction will stay in effect." *Id.* at 109. Importantly, from our review of the record, Appellant never objected at these hearings that he did not get proper notice, that the trial court denied him due process of law, that proceedings were truncated, or that he was not prepared to defend the petition to remove.

Appellant further contends that the trial court erred by not reopening the record to admit a "December 1, 2017 violation report of the Pennsylvania Department of Human Services regarding [Mother's] care in order to counter [P]etitioner['s] argument that a negative inference be drawn about [Appellant's] conduct because he 'threatened to file' a complaint with

- 8 -

regulators." Appellant's Brief at 77. Because Appellant failed to cite any legal authority to support his single paragraph, bald assertion, he waived this issue for purposes of appellate review. *See In re Estate of Whitley*, 50 A.3d 203, 209 (Pa. Super. 2012) (citation omitted) ("This Court will not consider the merits of an argument which fails to cite relevant case or statutory authority."). Moreover, "in reviewing the trial court's decision to reopen the record, we determine whether the trial court committed an error of law [] or abused its discretion." *Commonwealth v. Safka*, 141 A.3d 1239, 1248 (Pa. 2016). On this issue, the trial court recognized that Appellant "was effectively seeking to introduce additional evidence after the close of testimony" and "the actual quality of care provided by Foxdale [was] not relevant to the matter[]." Trial Court Opinion, 6/6/2018, at 5. We discern no abuse of discretion in denying Appellant's request to reopen the record. Appellant only offered the document in question to bolster his own credibility and it was not material to the issue before the trial court as to whether Appellant should be removed as Mother's health care power of attorney. For all of the foregoing reasons, we discern no abuse of discretion or error of law in the trial court's handling of the proceedings or in its recitation of the procedural history of this case.

In his second issue presented, Appellant argues that the trial court erred by allowing Petitioner to amend his original petition from an action to remove under 20 Pa.C.S.A. § 5461 (decisions by health care representative) to an action brought pursuant to 20 Pa.C.S.A. § 5454 (when health care power of attorney operative). Appellant's Brief at 54-59. Relying primarily on our

decision in **In re Estate of Border**, 68 A.3d 946 (Pa. Super. 2013), Appellant maintains that the trial court "had no authority under § 5454(d) to revoke [Mother's] health care power of attorney by which she had chosen [Appellant] to be her agent and advocate." **Id.** at 58. Appellant also asserts that he was prejudiced by the late filing of the motion to amend and that "[P]etitioner was not above board when he simply referred to § 5454 in his post-hearing brief, as the matter was being submitted to the court for a decision based on § 5461(e)." **Id.**

"Leave to amend lies within the sound discretion of the trial court and the right to amend should be liberally granted at any stage of the proceedings unless there is an error of law or resulting prejudice to an adverse party." **Hill v. Ofalt**, 85 A.3d 540, 557 (Pa. Super. 2014) (citation omitted). "The policy underlying this rule of liberal leave to amend is to insure that parties get to have their cases decided on the substantive case presented, and not on legal formalities." **Id.** (citation omitted). Despite Appellant's contrary argument, effective July 8, 2016, Section 5454(d) provided that the trial court may remove a health care power of attorney. **See** 20 Pa.C.S.A. § 5454(d) ("the health care power of attorney is valid until revoked by [… t]he court"); **compare** 20 Pa.C.S.A. § 5461(e) ("the court may disqualify for cause shown an individual otherwise eligible to serve as a health care representative"). As such, Appellant's reliance on **Estate of Border**, a decision rendered prior to the July 2016 amendment to Section 5454, is misplaced.

In permitting amendment, the trial court stated that Appellant "is not surprised by the amendment to the petition at this stage of litigation[,]" because the entire dispute centered around "remov[ing] Mother's health care agent and preventing [Appellant] from acting as the health care representative for Mother through the duration of her life." Trial Court Opinion, 3/22/2018, at 4-5. The trial court determined that Appellant's opposition to the request to amend was "merely advocating for a legal formality to dismiss the case after all the evidence had been presented." *Id.* Based upon our standard of review and the rules permitting liberal amendment, we discern no abuse of discretion or error of law in permitting Petitioner to amend his cause of action from reliance on Section 5461 to Section 5454.

Thereafter, the trial court determined:

An individual may create a health care power of attorney in a dated and signed agreement witnessed by two individuals. 20 Pa.C.S.A. § 5452. The health care power of attorney shall identify the principal and appoint a health care agent. [20 Pa.C.S.A.] § 5453(a). The [c]ourt has the power to revoke the Health Care Power of Attorney. [20 Pa.C.S.A.] § 5454(d)(2). The invalidity of a specific direction does not negate the entirety of the Health Care Power of Attorney, and the remaining portions continue to remain in full effect. [20 Pa.C.S.A.] § 5454(c). Having [Appellant] remain as Health Care Agent would impact Mother's treatment because of his full refusal to work with Foxdale staff resulting in Dr. Sepich refusing to be Mother's doctor while [Appellant] is the Health Care Agent. It is in Mother's best interest for Petitioner to be the Health Care Agent and work with Foxdale to preserve Mother's residency and relationships. The portion of the Health Care Power of Attorney naming [Appellant] as Health Care Agent is revoked and Petitioner is appointed Health Care Agent.

A health care power of attorney appoints a health care agent, while a health care representative is an individual authorized under § 5461 to make decisions for the principal in the absence of a health care agent. [20 Pa.C.S.A.] § 5422. A Health Care Representative may only act when there is no Health Care Agent, or no Health Care Agent willing to act. [20 Pa.C.S.A.] § 5461. An adult child may act as Health Care Representative. [20 Pa.C.S.A.] § 5461(d). […] A person may be disqualified from acting as Health Care Representative by the court for cause shown. [20 Pa.C.S.A.] § 5461(e). Foxdale's staff has stated they will not continue to provide medical treatment to Mother while [Appellant] is acting as her Health Care Agent or Representative. The [trial court found] this is sufficient to disqualify [Appellant] from acting as Health Care Representative, as it is in Mother's best interest to continue with her onsite doctors providing for her medical care.

Trial Court Opinion, 3/22/2018, at 4-5.

Upon review of the applicable statutory provisions and case law, we discern no abuse of discretion or error of law. The trial court is permitted to remove a health care agent or health care representative for cause shown. Here, the trial court determined that Petitioner showed cause to remove Appellant because he was not acting in Mother's best interest with regard to her medical care. The record supports that determination and we discern no abuse of discretion or error of law.

Finally, we address Appellant's argument that the trial court abused its discretion by granting the preliminary injunction because Petitioner failed to prove all of the essential prerequisites for an injunction. Appellant's Brief at 59-67. Appellant maintains that the trial court's findings of fact constituted an abuse of discretion. *Id.* at 67-75. However, having already determined Appellant was properly removed as health care power of attorney for Mother, as set forth above, the preliminary injunction was no longer necessary. As

- 12 -

such, Appellant's challenge to the preliminary injunction is rendered moot.[3]

*In re S.H.*, 71 A.3d 973, 976 (Pa. Super. 2013) ("If events occur to eliminate the claim or controversy at any stage in the process, the [issue] becomes moot.").

---

[3] We would also find Appellant's claim regarding the issuance of the preliminary injunction without merit. A party seeking a preliminary injunction must prove:

> 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits; 5) that the injunction it seeks is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest.

*Hendricks v. Hendricks*, 175 A.3d 323, 330 (Pa. Super. 2017). In this case, the trial court determined that "Mother would be irreparably harmed by no longer having access to the onsite medical treatment at Foxdale." Trial Court Opinion, 6/6/2018, at 4. The trial court further opined that the preliminary injunction "prevented greater injury and restored the parties to their status prior to Dr. Sepich's refusal to treat Mother due to [Appellant's] involvement." *Id.* The trial court also noted that the preliminary injunction "properly restrained an activity, the right to relief [was] clear, and Petitioner was likely to succeed on the merits." *Id.* The trial court determined that "[t]he injunction was suited to prevent the harm, and [was] not adverse to the public interest." *Id.* We agree. The trial court carefully weighed all of the necessary factors before properly granting the preliminary injunction.

For all of the foregoing reasons, Appellant is not entitled to relief. As such, we affirm the trial court's order removing Appellant, and subsequently appointing Petitioner, as health care power of attorney for Mother.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/15/2019