J-S36044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.S.M., AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.M. AND S.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 132 MDA 2019 |

Appeal from the Order Dated December 31, 2018
In the Court of Common Pleas of York County Orphans' Court at No(s):
6717-1673

BEFORE: PANELLA, P.J., SHOGAN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:                    **FILED JULY 31, 2019**

D.M. and S.M. appeal from the order of the Court of Common Pleas of York County (orphans' court), pursuant to Section 5536 of the Probate, Estates and Fiduciaries Code (PEF Code),[1] 20 Pa.C.S. §§ 5501-5555, revoking the Will executed by A.S.M. on July 28, 2017, and reinstating her Will dated May 17, 2017. We affirm.

We take the following pertinent facts and procedural background from our independent review of the certified record and the December 31, 2018

---

[1] Section 5536 (b) of the PEF Code, 20 Pa.C.S. § 5536 (b), provides, in relevant part, that "[t]he court, upon petition and with notice to all parties in interest and for good cause shown, shall have the power to substitute its judgment for that of the incapacitated person with respect to the estate and affairs of the incapacitated person for the benefit of the incapacitated person, his family, members of his household, his friends and charities in which he was interested."

---

* Retired Senior Judge assigned to the Superior Court.

order of the orphans' court.  A.S.M. is an elderly woman who was once married to M.B.M.  The couple had five children, H.G., D.C., S.M., D.M. and J.B.  A.S.M. and M.B.M. divorced in 1996 causing a split in the family.

On December 8, 2005, A.S.M. executed a Last Will and Testament leaving all personal property to H.G. and D.C.  Her residuary estate provided for forty percent to go to H.G., thirty percent to D.C., and ten percent each to S.M., D.M. and J.B.  The Will designated H.G. as Executrix.  Attorney Peter D. Solymos, Esquire, prepared the Last Will and Testament.

On April 1, 2014, A.S.M. designated H.G. as Power of Attorney for her Morgan Stanley brokerage account.  On November 12, 2014, after J.B. died, A.S.M. executed a new Will and Testament, which was prepared by Attorney Farley G. Holt, Esquire.  The November 12, 2014 Will provided that all personal property should be sold, and the entire estate divided forty percent to H.G., thirty percent (less $16,618.00) to D.C., fifteen percent to S.M., and fifteen percent (less $20,000.00) to D.M.  The Will designated H.G. as Executrix.

On May 9, 2017, A.S.M. attended an appointment with Attorney Thomas O'Shea and indicated that she wanted to remove her sons, S.M. and D.M., from her Will.  After the meeting, she contacted Attorney O'Shea by telephone, confirmed her decision to remove her sons from her Will and told him to proceed with a new Will's preparation, as discussed.

On May 17, 2017, A.S.M. executed a Last Will and Testament prepared by Attorney O'Shea.  She "expressed confidence and understanding" of the

contents of the Last Will and Testament and her Power of Attorney. The May 17, 2017 Will left all personal property to H.G. and directed that the residuary estate be distributed seventy percent to H.G. and thirty percent to D.C. H.G. again was designated as the Executrix and a durable Power of Attorney named her as Agent.

Approximately one month later, on June 12, 2017, Attorney O'Shea received a voicemail message from A.S.M. in which she requested changes to the May 17, 2017 Will. A male voice was heard in the background prompting the conversation. Two days later, without an appointment, D.M. and S.M. brought A.S.M. to attempt to speak with Attorney O'Shea about making changes to the Will and Power of Attorney. D.M. provided Attorney O'Shea's legal assistant with a typed paper stating what changes his mother, A.S.M, wanted to make to the Will. Approximately two weeks later, on June 29, 2017, D.M. and S.M. brought A.S.M. to Morgan Stanley, again, without an appointment, to ask how to remove H.G. as Power of Attorney. On July 5, 2017, D.M. provided an agent of Morgan Stanley with a notarized note saying that A.S.M. wanted to remove H.G. as Power of Attorney.

On July 6, 2017, A.S.M. met with Wendy Sherbine of the Adult Protective Services (APS) Division of the York County Area Agency on Aging (YCAAA). On July 10, 2017, APS performed cognitive tests on A.S.M. and she scored a seven out of ten. APS noted that A.S.M. appeared alert and oriented but that it had concerns about her obvious confusion regarding her finances. That day,

APS notified Morgan Stanley that a guardian was going to be appointed and that no changes should be made to the account until it received court-appointed guardian paperwork.

Also in July 2017, D.M. and S.M. contacted Attorney Holt to request the review and possible revision of A.S.M.'s May 17, 2017 Last Will and Testament. On July 28, 2017, Attorney Holt prepared a Last Will and Testament for A.S.M. It provided that twenty-five percent (less $20,000.00) of the estate go to D.M., twenty-five percent (less $16,618.00) go to D.C., and twenty-five percent each to go to H.G. and S.M. D.M. and S.M. were designated as co-Executors for the first time.

On August 8, 2017, APS substantiated the complaint to seek the appointment of a guardian for A.S.M. On September 12, 2017, it filed a Petition to declare A.S.M. incapacitated and to appoint a guardian for her person and estate. The Petition indicated that S.M. and D.M. took A.S.M. to the bank and urged her to sign a new Power of Attorney but she could not remember what she signed, and that she changed her Will in May and June 2017 but that she could not remember what she changed. On October 27, 2017, after a hearing, the court declared A.S.M. incapacitated and appointed Jewish Family Services as plenary guardian of the person and estate of A.S.M.

On May 16, 2018, H.G. filed a Petition "arguing that the [c]ourt should substitute its judgment in place of that of [A.S.M.'s] and, in essence, declare her last Will void, pursuant to 20 Pa.C.S. § 5536." (Orphans' Court Order,

12/31/18, at 9). After a hearing where testimony was taken concerning the preparation of the Wills from financial advisors, H.G. and S.M, the orphan's court found that: D.M. and S.M. "exerted pressure and influence over A.S.M." to change her Will and Power of Attorney beginning in June 2017; A.S.M. "suffered from a weakened intellect as early as July 10, 2017;" and that "[t]hroughout July 2017, [she] evidenced apparent confusion and inability to understand documentation provided to her for signature." (**Id.** at 6). On December 31, 2018, the court granted the Petition, revoked the July 28, 2017 Last Will and Testament, and reinstated the May 17, 2017 Last Will and Testament. D.M. and S.M. timely appealed the court's order.[2] They complied with the requirements of Rule 1925(b). **See** Pa.R.A.P. 1925(b).

The orphans' court set aside A.S.M.'s Will on July 28, 2017, pursuant to Section 5536 (b) of the PEF Code. We recently explained that:

> . . . Although Section 5536(b) does not expressly provide the Orphans' Court with [the] authority [to amend a will to disinherit its legatees], the legislature intended for courts to construe Section 5536(b) expansively. Viewed in this manner, Section 5536(b) empowers courts to substitute their judgment for incapacitated persons and [amend a will to] disinherit their legatees.

---

[2] "Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." **In re deLevie**, 204 A.3d 505, 511 (Pa. Super. 2019) (citation omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." **Id.** (citation omitted).

> Section 5536, entitled "Distributions of Income and Principal During Incapacity," . . . is part of Chapter 55 of the [PEF Code], whose purpose is to "protect[ ] the[ ] rights" of "incapacitated persons" through "the use of the least restrictive alternative." 20 Pa.C.S.A. § 5502. Chapter 55 defines an "incapacitated person" as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety." 20 Pa.C.S.A. § 5501.

*In re Navarra*, 185 A.3d 342, 350 (Pa. Super. 2018).

A petitioner must establish good cause by a preponderance of the evidence for the court to exercise its power under Section 5536(b). "A preponderance of the evidence is the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *Id.* at 354 (citation and internal quotation marks omitted).

In this case, the orphans' court found that H.G. established the good cause required for it to substitute its judgment for that of A.S.M. and reinstate the May 17, 2017 Last Will and Testament based on its October 27, 2017 finding of A.S.M.'s incompetence and the following findings regarding the testimony adduced at the hearing, stating:

> During the hearing, we considered testimony from Attorney O'Shea and his paralegal, Christy LaMotte, whose testimony we found credible,[3] and upon which we place great reliance, that [A.S.M.] stated a clear preference that her sons would not receive an inheritance from her will, since she was under the belief that

---

[3] "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re deLevie*, *supra* at 511 (citation omitted).

- 6 -

they had received an inheritance from their father. Attorney O'Shea had no reservations about her testamentary capacity at the time that he prepared the May 17, 2017 will.

Subsequent to that event, however, he or his office was contacted several times by Ms. Mackey, always in the apparent presence of one of her sons, for the purpose of changing her will. She appeared confused about her financial matters. Mr. O'Shea did not accommodate her wishes because of concerns about the influence her sons were having over her. He was certain that at the time [] that she made her will, she wanted nothing to go to [D.M.], and ultimately decided not to leave anything to [S.M.]

Around the time that [A.S.M.] went to Attorney Holt to change the will, she was accompanied by one or both of her sons, which also took her to a Morgan Stanley office for the purpose of changing beneficiaries on an account.

Attorney Holt was contacted by one of the sons who claimed that another will was found and that [A.S.M.] didn't know what she signed. This is further evidence that at the time [A.S.M.] executed the July 26, 2017 will, she was not of sound intellect. At the time she appeared at Attorney Holt's office, she was accompanied by her sons. While Attorney Holt interviewed [A.S.M.] perhaps first with her sons, and then without her sons present and opined that she appeared sound at the time, we conclude that Attorney Holt did not have full knowledge of many of the prior circumstances surrounding the attempts to change the previous will, and thus we give his testimony less weight on this issue. Attorney Holt did note that there appeared to be a "tug of war" among the children.

That [A.S.M.] was being influenced by her sons was further supported by the testimony of Paul Lintz of Morgan Stanley. He testified that he questioned [A.S.M.]'s competence in July of 2017, which he observed during meetings surrounding the removal of [H.G.] as a power of attorney.

In short, we consider the evidence of a voice mail left for Attorney O'Shea with a male voice in the background apparently coaching [A.S.M.] to be especially significant in that it supports other evidence of the influence her sons had during the time immediately surrounding the execution of the July 28, 2017 will.

- 7 -

(Orphans' Ct. Order, at 8-9).

Not disputing those findings, D.M. and S.M. maintain that the orphans' court abused its discretion in failing to address in its opinion the testimony of Mark Rohrbaugh, a financial advisor who met with A.S.M. a number of times. He testified that A.S.M never once expressed to him a desire to see H.G. get seventy percent of the estate and D.C. get thirty percent of the estate. He testified that over the nearly two-year time that he met with A.S.M., she expressed that each child would receive twenty-five percent of the estate. It was established on cross-examination, though, that he had sought to become A.S.M.'s guardian in the October 2017 competency proceeding and the orphans' court found him not to be suitable for that appointment.

However, D.M. and S.M. fail to cite any legal authority or provide any discussion that because an orphans' court does not address the testimony of all the witnesses that makes the trial court opinion deficient, thus waiving this argument. (See id. at iii, x-xi); Pa.R.A.P. 2101, 2119(a). In any event, Mr. Rohrbaugh's testimony did not go to the pertinent issue of whether A.S.M. was competent to change her Will on July 28, 2018. He had not seen any of the prior Wills, was unaware of specific considerations contained therein, such as earlier loans to D.M. and D.C., and did not realize that Attorney O'Shea, who had drafted her May 17, 2017 Will, would not change it in July 2017. As can be seen from the findings previously recounted, the orphans' court opinion focused on and made the necessary findings to support its determination

regarding the issue in this case—that undue influence was exercised by D.M and S.M. in having A.S.M execute the July 28, 2017 Will, notably which was after the July 10, 2017 YCAAA evaluation of A.S.M. that led it to seek a court-appointed guardian.

Accordingly, because H.G. established by a preponderance of the evidence that there was good cause for the court to set aside the July 28, 2017 Will and reinstate the Will dated May 17, 2017, to protect A.S.M.'s interests by the least restrictive means possible, we affirm the court's decision. **See *In re Navarra*, *supra*** at 354.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2019