J-S19033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF LINDA LEE DICKEY, AN INCAPACITATED PERSON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  LINDA LEE DICKEY | : | |
| | : | |
| | : | |
| | : | No. 98 WDA 2021 |

Appeal from the Decree Entered December 14, 2020
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  6519-1709

BEFORE:  DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                    **FILED:  July 19, 2021**

Linda Lee Dickey (Ms. Dickey) appeals from the final decree of the Court of Common Pleas of Westmoreland County (orphans' court) adjudicating her an incapacitated person and appointing plenary guardians of her person and estate.  We affirm.

**I.**

On July 22, 2020, Korinda Goldstrom (Ms. Goldstrom) filed a petition asserting that her 78-year-old mother, Ms. Dickey, had been diagnosed with an unspecified cognitive disorder and had recently begun living at Concordia Lutheran Ministries of Pittsburgh, a secured dementia unit.  Ms. Goldstrom contended that her mother's condition prevented her from receiving and

_____

[*] Retired Senior Judge assigned to the Superior Court.

evaluating information, communicating decisions or managing her finances, thus meeting the criteria for an incapacitated person. As a result, Ms. Goldstrom requested that the orphans' court appoint a plenary guardian of both her mother's person and estate.

The orphans' court held an evidentiary hearing on December 14, 2020.[1] At that hearing, Ms. Goldstrom presented the testimony of Dr. Bruce Wright, who was qualified as an expert in geriatric psychiatry. Dr. Wright was appointed by the orphans' court to perform an evaluation of Ms. Dickey. As part of his evaluation, he interviewed her on October 28, 2020, and reviewed her medical records. According to Dr. Wright, Ms. Dickey did not have any limitations or impairments in her ability to speak or communicate during her interview.

Dr. Wright testified that Ms. Dickey meets the criteria for an incapacitated person because she has a "major neurocognitive disorder," the term now used for dementia, a psychotic disorder that causes a delusional thought process and lacks the capacity to remember, understand, analyze or evaluate information. Dr. Wright did not believe that she was able to make informed decisions about her health or finances.

While admitting that Ms. Dickey had some capacity to function on a day-to-day basis, manage a small allowance for spending money and assist in her

_____

[1] The hearing was conducted virtually because of the COVID-19 pandemic.

care, could give informed consent for simple procedures or decisions, and assist in her daily care, Dr. Wright did not believe that she could handle anything complex or requiring a higher level of understanding. Moreover, he found that she could not live safely on her own without assistance because she has "profound memory impairment." He noted that Ms. Dickey was unable to name any of her medications during their interview, leading him to conclude that she would not be able to manage her medications independently.

At the end of his testimony, the orphans' court asked Dr. Wright whether he believed a limited guardianship would be sufficient rather than a plenary. Dr. Wright responded as follows:

> I think – you know, I think that her changes – or her cognitive impairment is permanent and will progress with time. I do think she has the capacity, as I mentioned, to make some very basic decisions, such as managing a small allowance, but I don't think she'd – beyond that, she has the capacity to manage her estate or make health decisions to any significant extent without her – or I should say independently ask her to do that.

N.T., 12/14/21, at 26.

Ms. Goldstrom also testified and was asked if she believed that her mother could safely reside by herself at her home. Ms. Goldstrom replied that she could not unless she had the assistance of caregivers. On cross-examination, Ms. Goldstrom testified that she believed her mother would need to reside in an assisted living facility of some sort for the rest of her life. Ms. Goldstrom also testified she could provide only limited assistance.

- 3 -

Ms. Dickey, meanwhile, presented the testimony of Bonnie Stupchuck, an administrator from Concordia Lutheran Ministries, where Ms. Dickey was living. She testified that Ms. Dickey is "highly functioning" and could care for herself with her daily activities, including bathing and dressing herself. Stupchuck acknowledged, however, that Ms. Dickey has received support services because of her memory issues, and that her condition has stayed the same since she had been admitted to Concordia.

Ms. Dickey also testified. She did not believe that she was incapacitated or needed a guardianship. However, in her testimony, she did not know how long she owned her home. She also thought she had only been retired from work for a period of two years, but then said she retired at the age of 72 and was under the belief that she continues to work with patients through her prior employment. Further, she denied that she had any physical or mental limitations despite evidence to the contrary. Among other things, she expressed her desire to return to living in her home and live by herself. Her counsel repeated this request in his summation, asserting that she should be allowed to return to her home with the assistance of caregivers.

At the conclusion of the hearing, the orphans' court found there was clear and convincing evidence that Ms. Dickey was an incapacitated person and needed guardianship of her person and estate. The orphans' court appointed Ms. Goldstrom plenary permanent guardian of Ms. Dickey's person and a trust company plenary permanent guardian of her estate. Ms. Dickey

filed this timely appeal to challenge the orphans' court's decree raising one issue for our review:

> Whether the [orphans' court] erred in finding by clear and convincing evidence that [Ms. Dickey] was totally incapacitated and in need of a plenary guardian of her person and estate when [Ms. Dickey] is able to function on a day-to-day basis and effectively communicate with professionals necessary to make medical and financial decisions and her impairment could be offset by assistance from hired caretakers?

Ms. Dickey's Brief at 4.[2]

## II.

In a limited argument, Ms. Dickey asserts that the orphans' court should have found that a limited guardianship—rather than a plenary—was appropriate based on the evidence. In support, she highlights several facts from the hearing that, in her view, support her position. First, she notes Dr. Wright's testimony that she was able to articulate and converse as part of her examination. Second, Dr. Wright admitted she can give informed consent to simple medical procedures. Third, Dr. Wright acknowledged that she has some capacity to function on a day-to-day basis, including managing a small allowance of money and assist in the administration of her medication. Fourth,

---

[2] "Our standard of review of the findings of an Orphans' Court is deferential. When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re deLevie,* 204 A.3d 505, 511 (Pa. Super. 2019) (citation omitted). "The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law." *Id.* (citation omitted).

Dr. Wright believed that she could possibly live at home if she had the assistance of caregivers, a sentiment that Ms. Goldstrom echoed. Ms. Dickey also highlights the testimony of Stupchuck that she can perform certain daily activities. Finally, Ms. Dickey emphasizes her own testimony that she wishes to live at home and believes that she could do so with some assistance. In sum, she asserts that the orphans' court erred in finding that a plenary guardianship was proper instead of a limited guardianship.

**A.**

Under the Probate, Estates and Fiduciary Code's (PEF Code), an incapacitated person is

> an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety.

20 Pa.C.S. § 5501.

The PEF Code also provides the specific considerations and findings necessary to the resolution of a guardianship petition by the orphans' court:

> **(a) Determination of incapacity.**--In all cases, the court shall consider and make specific findings of fact concerning:
>
> (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
>
> (2) The extent of the individual's capacity to make and communicate decisions.
>
> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supporters to assist the individual in making decisions and in light

- 6 -

of the existence, if any, of advance directives such as durable powers of attorney or trusts.

(4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.

(5) The duration of the guardianship.

(6) The court shall prefer limited guardianship.

**(b) Limited guardian of the person.**--Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the person with powers consistent with the court's findings of limitations, which may include:

(1) General care, maintenance and custody of the incapacitated person.

(2) Designating the place for the incapacitated person to live.

(3) Assuring that the incapacitated person receives such training, education, medical and psychological services and social and vocational opportunities, as appropriate, as well as assisting the incapacitated person in the development of maximum self-reliance and independence.

(4) Providing required consents or approvals on behalf of the incapacitated person.

**(c) Plenary guardian of the person.**--The court may appoint a plenary guardian of the person only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

**(d) Limited guardian of the estate.**--Upon a finding that the person is partially incapacitated and in need of guardianship services, the court shall enter an order appointing a limited guardian of the estate with powers consistent with the court's finding of limitations, which shall specify the portion of assets or income over which the guardian of the estate is assigned powers and duties.

**(e) Plenary guardian of the estate.**--A court may appoint a plenary guardian of the estate only upon a finding that the person is totally incapacitated and in need of plenary guardianship services.

20 Pa.C.S. § 5512.1.

Here, Ms. Goldstrom had the burden of proving that Ms. Dickey is totally incapacitated and in need of a guardian by "clear and convincing evidence."

20 Pa. C.S. § 5512.2. Under the PEF Code:

[t]o establish incapacity, the petitioner must present testimony, in person or by deposition from individuals qualified by training and experience in evaluating individuals with incapacities of the type alleged by the petitioner, which establishes the nature and extent of the alleged incapacities and disabilities and the person's mental, emotional and physical condition, adaptive behavior and social skills. The petition must also present evidence regarding the services being utilized to meet essential requirements for the alleged incapacitated person's physical health and safety, to manage the person's financial resources or to develop or regain the person's abilities; evidence regarding the types of assistance required by the person and as to why no less restrictive alternatives would be appropriate; and evidence regarding the probability that the extent of the person's incapacities may significantly lessen or change.

20 Pa.C.S. § 5518.

## B.

Considering these principles, we find that the orphans' court did not abuse its discretion in its determination concerning incapacitation and guardianship, as those decisions were supported by evidence, particularly that of Dr. Wright. In its Pa.R.A.P. 1925(a) opinion, the orphans' court observed that Ms. Dickey's own testimony indicated that while she could do daily care-

giving activities like bathing, eating and carrying on a conversation, she was overall confused and unaware of her personal medical and financial needs. The orphans' court then discussed Dr. Wright's expert testimony and how it supported its determination.

> According to Dr. Wright's testimony, he conducted an evaluation and reviewed medical records to determine that Ms. Ms. Dickey is diagnosed with a mood disorder, neurocognitive disorder, and a psychotic disorder that causes a delusional thought process. He indicated that the neurocognitive disorder is considered "major as opposed to mild" because it was his expert opinion that Ms. Dickey "does not have the capacity to effectively analyze, understand or remember information regarding her estate or health such that the appointment of the guardian [...] is necessary [ ... ]." Dr. Wright acknowledged that Ms. Dickey did have "some capacity to function on a day-to-day basis." As an example, he indicated that Ms. Dickey would be able to handle a small allowance for spending money as opposed to managing her entire estate, would be able to assist in administration of medication but not handle it completely independently, and could assist in daily hygiene or cooking but would also need supervision. When the Court read Dr. Wright the legal definition of an incapacitated person, he responded that his evaluation did indicate that Ms. Dickey fell within that definition.
>
> * * *
>
> With the testimony of Dr. Wright, [Ms. Goldstrom] satisfied the evidentiary requirements set forth in [Section] 5518. Since Dr. Wright characterized Ms. Dickey's condition as a "significant cognitive impairment [that causes Ms. Dickey to lack] the capacity to effectively analyze, and manipulate, and remember information such that she's not able to make [ ... ] informed decisions regarding either her estate or her health," this Court did not err in finding that the nature of Ms. Dickey's condition rendered her a totally incapacitated person despite her ability to handle certain daily tasks and communication.

Trial Court Opinion (TCO), 3/3/21, at 5-6 (internal record citations omitted).

In effect, while she does not believe that she needs any assistance, Ms. Dickey's argument amounts to a disagreement with the orphans' court that she could not live at home with the assistance of family and caregivers. We acknowledge that our Supreme Court has held that "a person cannot be deemed incapacitated if his impairment is counterbalanced by friends or family or other support." ***In re Perry***, 727 A.2d 539, 541 (Pa. 1999). The orphans' court addressed this argument in its Rule 1925(a) opinion as well, since Ms. Dickey raised it at the end of the evidentiary hearing.

> [T]he evidence provided did not indicate that Ms. Dickey had the appropriate assistance for this Court to find that guardianship services were not required. Dr. Wright testified that her "profound memory impairment" put her at a "tremendous risk for independent living." He was "concerned about her without constant help" and used the example that she could "put a pot on the stove and forget about it." No one provided any testimony that the type of constant help needed would be a possibility if guardianship services were not granted. The only family that testified was the Petitioner, Ms. Dickey's daughter, and she testified that she did not want to be a full time caregiver for her mother.
>
> Also, Ms. Dickey's own testimony made it clear that she did not grasp the need for the full time care that Dr. Wright recommended. She testified that she did not want a caregiver; she only wanted a companion because she did not want to be alone. She indicated that [Ms. Goldstrom] would not be capable of caring for her, and failed to indicate a proposed plan for who would take the companion role that she discussed in court. Based on her own testimony, it was clear to this Court that someone would still need to be responsible for setting up the appropriate care for Ms. Dickey and ensuring that Ms. Dickey utilized that care as needed and recommended by Dr. Wright. [Ms. Goldstrom] testified that she would be willing to assist Ms. Dickey in returning to her home with appropriate caregivers if it was recommended by treating professionals. This Court was confident that in appointing Petitioner as guardian, that she would consider any

recommendations of medical providers and would assist Ms. Dickey in moving home with appropriate caregivers if it was determined that such a move was medically appropriate. Therefore, the Court properly evaluated the facts and did not err in applying those facts to the required analysis set forth in [Section] 5512.1(a)(3) to determine that Ms. Dickey's diagnosis of a significant cognitive disorder prevented her from establishing a proper network of care to address her physical and mental limitations without the aid of a guardian.

TCO at 6-7.

Based on Dr. Wright's evaluation and Ms. Dickey's testimony that evidenced confusion and lack of awareness of her need for any assistance, the orphans' court did not abuse its discretion in finding clear and convincing evidence that Ms. Dickey suffered from major cognitive disorder that made her incapacitated to such a significant extent that she would be totally unable to manage her physical well-being and financial resources. Ms. Dickey's counsel's argument that she could be taken care of at home goes more to the nature of the caregiving that may occur, not to whether she was incapacitated. As the orphans' court noted, if medically appropriate and feasible, Ms. Goldstrom could assistant Ms. Dickey in moving home with appropriate full time caregivers.

Final decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/19/2021