OPINION BY STEVENS, P.J.E.: Timothy Paul Hendricks (“Timothy Paul”) and his company, ARED # 1-LLC (“ARED”) (collectively “Appellants”) appeal from two orders entered oh February 24, 2017, in the Court of Common Pleas of Montgomery County. First, Appellants appeal the order denying their motion seeking dissolution of the trial court’s August 24, 2016, interim order for special injunction, which the trial court entered in favor of W. Todd Hendricks (“W. Todd”) and his companies (collectively “Appellees”) and against Appellants. Next, Appellants appeal the second interim order for special injunction, which the trial court also entered in favor of Appellées and against Appellants.[1] After a careful review, we affirm. The relevant facts and procedural history have been aptly set forth by the trial court, in part, as follows: [Appellees] are a group of homebuild-ing and real estate companies engaged in the development of housing developments in Pennsylvania and New Jersey. . [W.] Todd Hendricks is the owner of the corporate parties who initiated this lawsuit [by filing a complaint on July 29, 2016, in which he claimed a breach of contract, breach of fiduciary duty, and tortious interference]. [Timothy Paul] Hendricks was formerly affiliated with [Appellees] and. [he] currently owns ARED.[2] [During the time] the Hendricks brothers were part of the same companies (hereinafter referred to collectively as “TH Properties”), TH Properties began developing the Northgate project on land it owned. Financial difficulties arose at TH Properties and led to the bankruptcy filing in the United States Bankruptcy Court for the Eastern District of Pennsylvania. Eventually, a Bankruptcy Plan (hereinafter referred to as “the Bankruptcy Plan”) was filed. In conjunction with the Bankruptcy Plan, a Transfer and Development Agreement (hereinafter. referred to as “TDA”) was signed. The TDA set up the reorganization of the properties formerly jointly owned by [Timothy Paul] and [W. Todd], [•] set forth their obligations under the Bankruptcy Plan[,] and [set forth] procedures for the future operations of TH Properties and related entities. [Timothy Paul] and [W. Todd] are guarantors of the TDA. The TDA provided for certain payments to creditors from future proceeds of real estate developments, including Northgate. TH Properties was to transfer the land on which Northgate V was being built to an [sic] creditor of .TH Properties, New Stream Real Estate, LLC (hereinafter referred to as “New Stream”), an entity unrelated to [Timothy Paul] or [W. Todd], [The interests of New Stream were subsequently transferred to an entity hereinafter referred to as GSRE.] TH' Properties was permitted to build the homes, and pursuant to the Bankruptcy Plan, [ ] three million dollars flowing from the construction of Northgate V was to be paid to a fund for distribution to TH Companies[’] unsecured creditors, To effectuate these payments to the creditors, when a unit at Northgate V [was] sold, the proceeds from the sale [were] split between TH Properties and New Stream [and later GSRE] on behalf of the creditors.[3]' One of the provisions of the Bankruptcy Plan enjoins the signatories from[,] inter alia, “proceeding in any manner in any place whatsoever, including employing any process that does not comply with or is inconsistent with the provisions of the Bankruptcy Plan.” Based upon the Bankruptcy Plan and the TDA, TH Properties was released from additional claims against them by their creditors. Thereafter, the Hendricks brothers decided to part ways. As part of the resolution of the brothers’ joint business interests, a Separation Agreement (hereinafter referred to as “the Separation Agreement”),[4] was signed [solely] by [W. Todd] and [Timothy Paul], in May of 2014, and was amended in July of 2014, The Separation Agreement was confirmed by the bankruptcy court. The Separation Agreement included provisions concerning the development of Northgate and the transfer of the ownership of land to GSRE, TH Properties, owned by [W. Todd,] was to develop Phase V of the Northgate property. TH Properties has agreements with the landowners, GSRE, to build the site and pay them for the land when the closing on a unit take[s] place. The Separation Agreement also provided that [Timothy Paul] would “protect and defend” [W. Todd’s] rights to develop all phases of the Northgate Project.[5] In June of 2016, ARED, [Timothy Paul’s] wholly owned company, began negotiations to purchase the interest of GSRE in Northgate. [Timothy Paul] testified that closing on an agreement for ARED to purchase the • Northgate V land was scheduled for August 31, 2016. On June 22, 2016, counsel for ARED sent a letter to [Appellees] on behalf of “ARED # 1, LLC, the purchaser of all of the membership interests” in GSRE. In this letter, counsel advised [Appel-lees] that TH Properties was in default of the Separation Agreement, and that TH Properties’ right to develop Nor-thgate V had terminated. In contradiction to this letter, [Appel-lees’] witnesses testified that following the filing of the Bankruptcy Plan and the signing of the Separation Agreement, the development of Northgate had progressed. Over 100 units of the Nor-thgate V development had been sold and construction of the remaining' 180 units was on-going, by the August 2016 hearing. There has been no default by TH Properties in carrying out the terms of the Bankruptcy Plan for the development of Northgate, and prior to the June 22, 2016, letter from counsel for ARED, GSRE has never notified [Ap-pellees] of any alleged default. Furthermore, witnesses testified that the development of Phase VI of Northgate was also in progress and is doing well. In August [of] 2016, [Appellees’] employees and subcontractors reported that [Timbthy Paul] was on the Nor-thgate V property telling people that he was the owner of the land and would deconstruct the work done. Someone not associated with [Appellees] was witnessed taking soil samples. These events led to [Appellees] filing, [on August 22, 2016, an Emergency Petition for-a Preliminary Injunction]. Trial Court Opinion, filed 5/22/17, at 8-5 (footnote added) (footnote omitted). In the petition, Appellees sought to restrain Appellants from purchasing the land on which the development, Northgate V, was being built, going onto the Northgate V property, and confronting subcontractors .and/or potential purchasers. The trial court held a hearing on August 24, 2016, and on that same date, the trial court entered an order entitled “Interim Order for Special Injunction.” Therein, ,the trial court temporarily. enjoined Appellants from purchasing any interest held by GSRE in Northgate and having any communications concerning Northgate with anyone involved with Northgate, including TH Properties’ subcontractors, employees, Upper Hanover Township, and GRSE. See Trial Court Order, dated 8/24/16. On September 15, 2016, Appellees filed a petition, for contempt alleging that one of ARED’s employees contacted Andrea Construction, a vendor of TH Properties, and discussed a matter related to Northgate in violation of the August 24, 2016, interim order. Further, they alleged that, in .violation of the interim order, Dave Wertz, an employee of ARED, emailed TH Properties’ Northgate realtor, Jeff Craig, informing him that he was to advise all buyers that there was a dispute over the ownership of Northgate. Appellants filed a motion in opposition to Appellees’ motion for contempt. Subsequently, Appellees withdrew their motion for contempt. See Trial Court Order, filed 1/30/17. Meanwhile, on October 3, 2016, Appellants filed a motion, and supporting brief, seeking dissolution of the trial court’s August 24, 2016, interim order for special injunction. Therein, they alleged Appel-lees misrepresented/omitted material facts in securing the August 24, 2016, interim order,[6] failed to join indispensable parties, and failed to satisfy the elements necessary to obtain a temporary injunction. Appellees filed a response to the motion arguing that they did not fail to join indispensable parties and did not make any misrepresentation/omissions. Moreover, they argued they met the requirements necessary for the issuance of a temporary injunction. Additionally, on February 10, 2017, Appellees filed a motion and brief to convert the August 24, 2016, interim order of special injunction to a permanent injunction. The trial court held hearings on the matter, and on February 24, 2017, the trial court entered an order denying Appellants’ motion seeking dissolution of the trial court’s August 24, 2016, interim order for special injunction. Moreover, on this date, the trial court entered a second interim special injunction order directing: 1. That effective upon posting by [Appel-lees] of security.. .an injunction is hereby issued, enjoining and restraining [Appellants] from purchasing any interest held by GSRE [] in Nor-thgate and having any communications concerning Northgate with anyone involved including, but not limited to, [TH Properties’] subcontractors, employees, Upper Hanover Township, and [GSRE]. 2. That any [Appellants] that have taken any action to request, direct or order any action that would set in motion anything that would be inconsistent with the general prohibitions in Paragraph 1, shall immediately take action to make certain that any such action that would violated [sic] Paragraph 1 does not take place. 3. That all others with notice of this Order are enjoined, from either acting in concert with [Appellants] as agents, representatives, affiliates, employees or subcontractors of [Appellants] from purchasing any interest held by [GSRE] in Northgate. 4. That this Special Injunction shall continue in effect until further Order of [the trial] court. 5. That this Order will be effective immediately upon presentation to [the trial court] of security by [Appellees] as set forth in Pa.R.Civ.P. 1531(b)(2), in the amount of $250.00. Trial Court Order, filed 2/24/17. This appeal followed on March 24, 2017. The trial court did not direct Appellants to file a Pa.R.A.P. 1925(b) statement; however, the trial court filed an opinion. In their first issue, Appellants contend the trial court did not have subject matter jurisdiction in this matter since Appellees failed to join indispensable parties. Specifically, Appellants claim that GSRE and its entities are indispensable parties and consequently, because GSRE and its entities are not parties, the trial court lacked subject matter jurisdiction over this matter, including the entry of the interim orders for special injunction. The failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction. Orman v. Mortgage I.T., 118 A.3d 403, 406 (Pa.Super. 2015). Whether- a court lacks jurisdiction due to the failure to join an indispensable party may be raised at any time or sua sponte. Id. Whether a court has subject matter jurisdiction presents a question of law, making our standard of review de novo and the scope of our review plenary. Mazur v. Trinity Area School Dist., 599 Pa. 232, 961 A,2d 96 (2008).' With regard to whether a party is an indispensable party, this Court has explained the following: [A] party is indispensable when his or her rights are so connected with the claims .of the litigants that no decree can be made without impairing those rights.[ 7] If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation. 1. Do absent parties have a right or an interest related to the claim? 2. If so, what is the nature of that right or interest? 3. Is that right or interest essential to the merits of the issue? 4. Can justice be afforded without violating the due process rights of absent parties? In determining whether a party is indispensable, the basic inquiry . remains whether justice can be done in the absence of a third party. Orman, 118 A.3d at- 406-07 (quotation marks, quotations, and citation omitted) (footnote added). In undertaking this inquiry, the nature of the claim and the relief sought must be considered. See City of Philadelphia v. Commonwealth, 575 Pa. 542, 567, 838 A.2d 566, 581 (2003). In concluding GSRE and its entities are not indispensable parties, the trial court reasoned as follows: The relief sought in this lawsuit is to enforce a contract between [W.] Todd and [Timothy Paul] and the companies they own. GSRE [and its entities are] not a party to that contract. The injunction entered enforces a contractual term that prevents [Timothy Paul] from violating a contractual obligation to “protect and defend” [W.] Todd’s rights to develop all phases of the Northgate project. Such relief does not impede any obligations or rights of any non-parties. GSRE [and its entities were] well aware of the litigation, and the injunction being sought [by Appellees]. Counsel for GSRE was present.at all the hearings. No effort was made by GSRE [or its entities] to intervene in the lawsuit, or to prevent the relief sought. [Nothing in the injunction entered prevents GSRE (or its entities) from selling its interest in the property to any other entity. Any interest [] GSRE (or its entities) may have is not so intertwined with the relief sought that [justice] cannot be done in its absence.] Trial Court Opinion, filed 5/22/17, at 9 (footnote omitted but included in text). We find no error in the trial court’s analysis,[8] and thus, we find no merit to Appellants’ first claim. In their second claim, Appellants argue the trial court’s orders are an abuse of discretion since Appellees failed to satisfy the necessary elements permitting the entry of the interim orders of. special injunction. At the outset, we note that in reviewing preliminary injunction[9] orders, “an appellate court is to conduct a searching inquiry of the record. Accordingly,,,, the scope of review in preliminary injunction matters is plenary.” Warehime v, Warehime, 580 Pa. 201, 209 n.7, 860 A,2d 41, 46 n.7 (2004), With regard to the standard of review, appellate review of a trial court’s order granting or denying preliminary injunctive relief is “highly deferential.” Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc., 573 Pa. 637, 646, 828 A.2d 995, 1000 (2003). This “highly deferential” standard of review requires that: When reviewing a trial court’s grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court below. We may reverse if the trial court’s ruling amounted to an abuse of discretion or a misapplication of law. Morgan Trailer Mft. Co. v. Hydraroll, Ltd., 759 A.2d 926, 932 (Pa.Super. 2000) (quotation omitted). “An order [refusing to dissolve] a preliminary injunction is equivalent to the [grant] of a preliminary injunction.” Deitrick v. Northumberland County, 846- A.2d 180, 184 (Pa.Cmwlth. 2004) (citing Rubin v. Bailey, 398 Pa. 271, 274, 157 A.2d 882, 883 (I960)). Similar to our review of an order granting or denying a preliminary injunction, this Court’s “scope of review in such a case is to determine if there existed any reasonable grounds for the action of the court below.” Deitrick, 846 A.2d at 184 (citation omitted). In ruling on a preliminary-injunction request, a trial court has “apparently reasonable grounds” for granting the preliminary injunction (and refusing to dissolve it) where the trial court finds the party seeking the injunction has established six essential elements. Summit Towne Centre, Inc,, supra. Specifically, that party has the burden of proving: 1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages; 2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings; 3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; 4) that the activity it seeks to restrain is actionable, that its-" right to relief is clear, and that the wrong is manifest, or, in other words, -must show that it is likely to prevail on the merits; 5) that .the injunction it seelis is reasonably suited to abate the offending activity; and, 6) that a preliminary injunction will not adversely affect the public interest. Warehime, 580 Pa. at 209-10, 860 A.2d at 46-47 (quotation marks and quotation omitted). In the case sub judice, the trial court set forth the following relevant analysis: [The trial court] found . [Appellees’] witnesses to be credible on all controlling issues. The evidence presented supports a finding that [Timothy Paul], and his company, ARED, sought to purchase the land on which Northgate V is being developed, and has in other ways attempted to thwart [Appellees’] construe- . tion of the units at Northgate V. Such actions are in violation of both the provisions of the Bankruptcy Plan and of the Separation Agreement. that required [Timothy Paul] to “protect and defend” [W.] Todd’s rights to develop all phases of the Northgate project. Furthermore, [Appellants’] actions serve to prevent the creditors of [W.] Todd and [Timothy Paul’s] prior company from being paid. The relief given to [W.] Todd and [Timothy Paul] under the Bankruptcy Plan was contingent upon the. payments from the development of Northgate. The contractual obligation of [Timothy Paul] not to interfere with [W.] Todd’s development of Northgate is clear, as is the fact that [Timothy. Paul] has attempted'to interfere. This Court finds that .the evidence supports a finding that [Appel-lees] have a likelihood of success on .the merits in this lawsuit.[10] The [trial court] further finds .that failing to enjoin [Appellants] would lead to irreparable harm which cannot be compensated by damages. At the time of the initial hearing,,. [Appellants] were planning on purchasing Northgate V land, and had informed [Appellees] that their rights to develop the,, property were to be terminated. [W.] Todd testified that the proceeds of the sales of the Northgate project were the only source to generate any funds for the creditors going forward. Some payments have been made to ’ the creditors from the proceeds of the sales to date,' [W.] Todd further testified that if [Appellees] were to lose their right to develop Northgate, it would be catastrophic and would destroy the ability to pay the creditors and . honor the Bankruptcy Plan’s reorganization. According to [WJ Todd, even if the project was stopped temporarily due to [Timothy Paul’s] actions, the relationship with potential buyers and subcontractors which had been rebuilding since the bankruptcy would be damaged,.to the detriment of the ability to repay creditors as envisioned by the Bankruptcy Plan. The purchase of the land by ARED, and the actions of [Timothy Paul] in communicating with subcontractors [and] hindering construction of Nor-thgate [] create[s] a situation that [] interfere^] with the development of the property by [Appellees], This in turn would likely interfere with, or at least delay, payments to creditors, which payments were an integral part of [W.] Todd and [Timothy Paul’s] bankruptcy relief, and current financial stability.[11] Allowing the purchase by [Appellants] would likely interrupt the ongoing construction and would cause greater harm than allowing the planned development and payments to creditors to go forward.[12] Such harm would be irreparable to [Appellees] and could not be fully compensated by money damages. The injunction entered keeps the status quo... ensuring the continuation] of the development as envisioned in the bankruptcy reorganization and the separation agreement. The public interest is served by enforcing a bankruptcy plan and contractual obligations, and by having the parties’ creditors paid.[13] [Appellants’] argument that it is not [Timothy Paul], but rather ARED who is seeking to purchase the land on which Northgate is being built lacks merit. The evidence shows that [Timothy Paul] is the sole owner of ARED. Certainly, in a court of equity, a party should not be permitted to do indirectly that which it is forbidden to do directly.[14] Furthermore, the [Bankruptcy] Plan and the Separation Agreement both refer to [W.] Todd’s development of “all phases” of Northgate. ... Furthermore, when the Emergency Petition was presented on August 24, 2016, the sale of the Northgate land to ARED was scheduled for August 31, 2016. This sale would have caused irreparable harm to [Appellees], and to the goal of the bankruptcy resolution. The need for emergency relief in August [of 2016] was proven, as was the [subsequent] necessity for continuing the injunction.[15] Trial Court Opinion, filed 5/22/17, at 6-9 (bold in original) (footnotes added). We find no abuse of discretion and conclude the trial court had “apparently reasonable grounds” for granting (and refusing to dissolve) the special injunctions. See Summit Towne Centre, Inc., supra. For all of the aforementioned reasons, we affirm. Affirmed. . We note the trial court’s order denying Appellants’ motion seeking dissolution of the August 24, 2016, interim order for special injunction, as well as the trial court’s second interim order for special injunction, are immediately appealable as of right pursuant to Pa.R.A.P. 311(a)(4) ("An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:... An order that grants of denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]”). . Timothy Paul admitted that he is the sole officer of ARED. N.T., 10/25/16, at 25. . Timothy Paul admitted that all net profits from the sale of the homes at Northgate were to be contributed to TH Properties’ bankruptcy reorganization. N.T., 10/25/16, at 26-28. He also admitted that, at the time of the reorganization, he was a fifty percent interest holder in TH Properties. Id. at 30; N.T., 1/27/17, at 109. . The Separation Agreement is actually entitled "Memorandum of Understanding,” and it was attached to Appellees' complaint as Exhibit P-4. For the sake of consistency, we shall refer to the. exhibit as the Separation Agreement. .. The purpose of the Separation Agreement was "to peaceably separate [W.] Todd’s and [Timothy Paul’s] business dealings with one another.” N.T., 10/25/16, at 156; Separation Agreement, Exhibit P-4, . Specifically, Appellants averred that Appel-lees misrepresented that Timothy Paul owed a fiduciary obligation to Appellees and, to this end, intentionally “blacked out” paragraph nine of the Separation Agreement, which indicated that "[b]y executing this document, [Timothy Paul] tenders his resignation on the [TH Properties] board as it relates to the [TH Properties] reorganization.” . "A corollary of this principle is that a party against whom no redress is sought need not be joined. In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed.” Sprague v. Casey, 520 Pa. 38, 48-49, 550 A.2d 184, 189 (1988) (citations omitted). . Appellants also suggest on appeal that Nor-thgate VI, LP, and THP Investments, Inc. are also indispensable parties. Appellants have not persuaded us that these two parties,which were not parties to the contract at issue, have rights/interests essential to the merits or that justice cannot be done in their absence. See Orman, supra. ."Because of the many similarities between preliminary and special injunctions, the two types tend to merge into one and the words are used interchangeably. Although the former equity rules made minor distinctions between them, the Pennsylvania Rules of Civil Procedure treat them exactly alike.” 5 Goodrich Amram 2d § 1531(a):l (Amram Commentary). . As to this prong, we elaborate that the "cornerstone” of Appellees’ civil complaint was Timothy Paul’s breach of the Separation Agreement, as well as ARED's interference therewith. To this end, Shaun Hackman, who oversees the financial operations of TH Properties, testified that under the Bankruptcy Plan, Northgate was the "largest remaining community [yet to be developed].” N.T., 1/27/17, at 12. Mr. Hackman testified that, in a letter, Timothy Paul indicated that he was the new owner of TH Properties' creditor (GSRE Entities), he personally deemed TH Properties to be in default, and .he planned to "kick TH Properties’ vendors off Northgate.” Id. at 28. Mr¡ Hackman indicated this would have prevented TH Properties from building and selling the homes on Northgate, for which the proceeds under the Bankruptcy Plan were to be split with GSRE. Id. ■ Timothy Paul admitted that he, through ARED, negotiated with GSRE to purchase the company, including its Northgate asset. N.T., 10/25/16, at 71, 73. He also admitted that his attorney sent the letter referenced supra after he signed a contract to purchase GSRE. N.T., 10/25/16, at 71, 73, 80-81. He also admitted that he sent a text message indicating he planned to move TH Properties off the Nor-thgate site and remove the building foundations they had placed. Id. at ,92. He testified he made these communications solely to “get TH Properties’ attention” and begin a dialogue with them, Id. at 94, 109, 151. He also noted that if the injunction was lifted he would continue with the purchase of GSRE. Id. at 113. He testified that he believed his purchasing of GSRE would not violate the Separation Agreement, although he admitted that if he purchased GSRE he could summarily kick TH Properties' off of Northgate. Id at 107, 116. However, he denied that he would do so as long as TH Properties is "willing to talk to [him].” Id. at 11,7. . As to the prong that the injunction was necessary to prevent immediate, irreparable harm, Mr. Hackman testified that, if TH Properties could not continue with the Bankruptcy Plan, its reputation would be greatly damaged. N.T., 1/27/17, at 31-32. He testified that TH Properties would be unable to pay its vendors and contracted homebuyers would be without a home. Id. at 27. To the extent Appellants challenge the credibility of Mr. Hackman's testimony, see Appellants’ Brief at 58-59, we note that credibility determinations are properly for the trial court in this matter. See Summit Town Centre, Inc., supra. . As to the prong that greater injury would result from refusing an injunction than from granting it, Mr. Hackman presented testimony as to the harm that would result if Timothy Paul was permitted to cease TH Properties’ development of Northgate. Contrary to Appellants’ suggestion, the trial court was permitted to disbelieve Timothy Paul’s testimony that, if he purchased GSRE, he would permit TH Properties to continue developing Nor-thgate. See Summit Town Centre, Inc., supra. . Appellants have presented no specific argument challenging the trial court’s determination that the entry of a preliminary injunction would maintain the status quo and not adversely affect the public interest. In any event, we conclude the trial court had "reasonably apparent grounds” for its determinations. See Summit Towne Centre, Inc., supra. . We elaborate that Timothy Paul admitted that the Separation Agreement, to which he and W. Todd were parties, specifically indicated that he and W. Todd, individually, as well as "entities they own or may own" were to facilitate the transactions contemplated in the agreement, and that he was the party to the agreement who suggested this wording. N.T., 10/25/16, at 37, 41, 155. He further admitted the Separation Agreement was a binding agreement, and he never informed W. Todd that he believed the Separation Agreement was void. Id. at 55, 66. . We agree with the trial court’s reasoning in this regard and note that the injunctions were reasonably suited to abate the offending activity. See Warehime, supra.