J-A20028-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KICKERZ BAR & GRILL, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RACCE, LLC, D/B/A LIVE WIRE | : | |
| RELOADED AND ROBERT CUMMINGS | : | |
| | : | No. 246 WDA 2021 |
| Appellants | : | |

Appeal from the Order Entered February 1, 2021
In the Court of Common Pleas of Fayette County Civil Division at No(s):
01804-2020

BEFORE: PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: OCTOBER 12, 2021**

Appellants, Racce, LLC, d/b/a Live Wire Reloaded and Robert Cummings, appeal from the trial court's February 1, 2021 order granting Appellee's, Kickerz Bar & Grill, LLC ("Kickerz"), motion for preliminary injunction. We affirm in part, vacate in part, and remand.

The trial court summarized the background of this case as follows:

By [a]greement dated March 11, 2020, Shana Fischer entered into two contracts with Robert Cummings — one for the purchase of his business for $30,000 — $5,000 of which Ms. Fischer had already deposited at the time the contract was signed — and a second for the purchase of a liquor license belonging to Mr. Cummings for $30,000. The contract for the liquor license also stated that "[a]ny and all debt including but not limited to taxes, leins (*sic*), judgements (*sic*) or fines before March 11, 2020[,] will be the full responsibility of the Seller." The [s]eller in the contracts was identified as Robert Cummings. The total amount Ms. Fischer owed to Mr. Cummings was $60,000.

Prior to March 11, 2020, Mr. Cummings owned Racce, LLC, which does business as Live Wire Reloaded. Live Wire Reloaded is a bar

and restaurant located in McClellandtown, Pennsylvania. On March 11, 2020, Ms. Fischer filed a Certificate of Organized Domestic Limited Liability Company with the Pennsylvania Department of State, designating her company as "Kickerz Bar & Grill, LLC" — which is … Plaintiff[/Appellee] in this [a]ction. The agreement between Ms. Fischer and Mr. Cummings is that Ms. Fischer would pay Mr. Cummings for his business and liquor license, and then she would operate her own bar and restaurant at the same location.

The liquor license at issue was owned by Racce, LLC and Mr. Cummings, and was registered to 1411 McClellandtown Road, which is where the Live Wire Reloaded premises was located. The property on which Live Wire Reloaded was located is owned by Geno Tiberi. Mr. Cummings was a tenant of Mr. Tiberi, and after taking over the business at the same location, Ms. Fischer was to then become the tenant of Mr. Tiberi.

After entering into the [a]greements with Mr. Cummings, Ms. Fischer discovered that there was a lien on the liquor license. [Kickerz's] Exhibit 6 shows Robert Cummings and Racce, LLC[,] as debtors to Tiberi's Inn, LLC, and that collateral for the debt includes "Pennsylvania Liquor License No. R11065." On June 19, 2020, Mr. Tiberi told Ms. Fischer that there was an outstanding balance of $24,500[,] in order to pay off the lien for the liquor license. Mr. Cummings had originally purchased the liquor license from Mr. Tiberi, but Mr. Cummings did not pay in full, which was why there was a lien on the license.

Ms. Fischer was told by the Pennsylvania Liquor Control Board [(PLCB)] that the lien would need to be released before the Board would transfer the liquor license from Racce, LLC[,] to Kickerz…. By June 19, 2020, Ms. Fischer had paid Mr. Cummings $30,000 for the business, and had also deposited $24,500 into a separate escrow account in order to pay off the lien that was held by Mr. Tiberi.

After Ms. Fischer made all of the required payments to Mr. Cummings, and deposited the $24,500 into a separate bank account that would be used to pay off the lien, Mr. Cummings indicated to Ms. Fischer that he was not going to sign a final document that would complete the liquor license transfer. In September of 2020, Mr. Cummings demanded additional payments from Ms. Fischer, and then indicated that he was planning to transfer the liquor license to a different location in

another township.  As a result of Mr. Cummings's actions, Ms. Fischer was no longer able to serve alcohol at [the bar/restaurant].[1]

On October 13, 2020, Ms. Fischer filed a [c]omplaint for [s]pecific [p]erformance and for [i]njunctive [r]elief.  The specific performance was for Mr. Cummings to follow through with his agreement to sell the liquor license to Ms. Fischer and Kickerz…, and the injunctive relief was for Mr. Cummings to not transfer the liquor license to a location in a different township.

This Court held a [h]earing on [Kickerz's] [m]otion for [p]reliminary [i]njunction on January 29, 2021, at which time Ms. Fischer testified to the foregoing facts.  Counsel for [Appellants] did not present any testimony at the [h]earing, and Mr. Cummings did not appear at the [h]earing.  At the end of the [h]earing, this [c]ourt found in favor of [Kickerz] and stated the reasons for doing so on the record.[2]

_____

[1] Prior to Mr. Cummings's withdrawing the application to transfer, Ms. Fischer had been running Live Wire Reloaded with Mr. Cummings's liquor license while waiting for the transfer of the license to be completed.  *See* Kickerz's Brief at 11 ("Prior to that time, Ms. Fischer was operating Live Wire Reloaded, was paying bills, and was selling alcohol since at least June 2020 when pandemic restrictions were relaxed.  … The license transfer approval was imminent in September 2020 until Mr. Cummings pulled the plug."); *see also* Appellants' Brief at 7 (noting that, before the liquor license transfer was finalized, Ms. Fischer ran the day-to-day operations of Live Wire Reloaded and purchased alcohol under the name Racce, LLC).

[2] The trial court's order, which was dated January 29, 2021, and entered on February 1, 2021, set forth the following:

**AND NOW**, January 29th, 2021[,] upon consideration of the foregoing *Motion for Preliminary Injunction*, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1) this [c]ourt makes the following findings:

(a) preliminary injunctive relief will prevent immediate and irreparable harm to [Kickerz];

*(Footnote Continued Next Page)*

_____

(b) refusing preliminary injunctive relief would result in greater harm than granting it;

(c) [Kickerz] is likely to prevail on the merits;

(d) the preliminary injunctive relief is narrowly tailored to abate [Appellants'] wrongful conduct; and

(e) preliminary injuncti[ve] relief will not adversely affect the public interest.

2) [Kickerz's] *Motion for Preliminary Injunction* is hereby **GRANTED** and the preliminary injunction is **ENTERED** as follows:

(a) [Appellants] must sign all documents necessary to cancel its application for place-to-place transfers of the Restaurant Liquor License No. R-11065 pending under PLCB File No. 701974;

(b) within ten (10) days of this order, [Appellants] are commanded and directed to fully cooperate in the liquor license transfer process with the [PLCB];

(c) subject to approval by the PLCB, [Appellants] are **ORDERED** to transfer Restaurant Liquor License No R-11065; LID: 104042 to [Kickerz];

(d) within ten (10) days of the PLCB conditionally approving the transfer of Restaurant Liquor License No. 11065; LID: 104042 to [Kickerz], [Appellants] are **ORDERED** to execute any and all necessary documents required by the PLCB to effectuate the transfer of Liquor License No. R-11065; LID 104042 to [Kickerz], including but not limited to PLCB Form 1854T (Certificate of Completion);

(e) should [Appellants] fail to execute PLCB Form 1854T (Certificate of Completion) within ten (10) days of the PLCB conditionally approving the transfer of Restaurant Liquor License No. R-11065; LID 104042 to [Kickerz], PLCB shall complete the transfer of said license to [Kickerz] without [Appellants'] signature;

(f) [Kickerz] has paid all money due to [Appellants] for the purchase of Liquor License No. R-11065, LID: 104042, and

*(Footnote Continued Next Page)*

- 4 -

On February 19, 2021, [Appellants] filed a [n]otice of [a]ppeal to the Superior Court.[1, 3]  [Appellants] filed a [timely Rule 1925(b) c]oncise [s]tatement of [i]ssues raised on [a]ppeal on March 23, 2021.

> [1] As this [c]ourt noted in its [March 2], 2021 [o]rder directing [Appellants] to file a [Pa.R.A.P. 1925(b) concise s]tatement of [i]ssues raised on [a]ppeal, [Appellants] failed to serve their [n]otice of [a]ppeal concurrently on the undersigned, which is required by Pa.R.A.P. 906[(a)](2).

Trial Court Opinion ("TCO"), 4/23/21, at 1-4 (internal citations omitted).

Appellants raise two issues for our review:

1. Did the trial court commit an error of law by divesting itself of subject matter jurisdiction in declaring and interest [*sic*] in an indispensable 3rd party[:] Tiberi's Inn, LLC?

2. Did the trial court commit an error of law and/or abuse its discretion where no reasonable grounds exist for the trial court's finding that [Kickerz] established each of the essential prerequisites for the grant of a preliminary injunction?

---

> [Kickerz] is **ORDERED** to make a final payment of Twenty Four Thousand Five Hundred ($24,500.00) Dollars to Tiberi's Inn, LLC, a lienholder for said license; and
>
> (g) [Appellants] are **ENJOINED, BARRED, and RESTRAINED** from selling or soliciting, directly or indirectly, or otherwise conveying, pledging, or encumbering, the subject liquor license to any other person or entity other than [Kickerz].

3) [Kickerz] is hereby **ORDERED** to post bond in accordance with Pa.R.C.P. 1531 with the Prothonotary in the amount of $0.00.

Order, 2/1/21, at 1-2 (emphasis in original).

[3] ***See*** Pa.R.A.P. 311(a)(4) (setting forth that an appeal may be taken as of right from an order that grants an injunction).

Appellants' Brief at 5.[4, 5]

At the outset, as the trial court observed, Appellants failed to serve their notice of appeal on the trial court in accordance with Rule 906(a)(2). **See** Pa.R.A.P. 906(a)(2) ("Concurrently with the filing of the notice of appeal under Pa.R.A.P. 905, the appellant shall serve copies thereof, and of any request for transcript, and copies of a proof of service showing compliance with this rule, upon: … (2) The judge of the court below, whether or not the reasons for the order appealed from already appear of record[.]"); **see also** Certificate of Service to Notice of Appeal, 2/19/21 (single page) (stating that the notice of appeal was only served on Kickerz's counsel). This Court has stated that "when an appellant fails to serve the notice of appeal on the trial court per Rule 906(a)(2), this Court has discretion to take any appropriate action, including remand[ing] to the trial court for the completion of omitted

---

[4] We have re-ordered Appellants' issues for ease of disposition.

[5] Appellants' brief does not comply with Pa.R.A.P. 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Although Appellants raise two questions in their statement of the questions involved, they do not divide their argument section into two corresponding parts. **See Donaldson v. Davidson Bros., Inc.**, 144 A.3d 93, 99 n.9 (Pa. Super. 2016) (determining that the appellant failed to comply with Rule 2119(a) where the appellant's brief did not "present and develop eight arguments in support of the eight questions raised"). We chastise Appellants for their lack of compliance with Rule 2119(a). While we do not condone such noncompliance, it does not impede our appellate review, and we will therefore overlook Appellants' violation of Rule 2119(a).

procedural steps." ***Coffman v. Kline***, 167 A.3d 772, 776 (Pa. Super. 2017) (citation and brackets omitted). However, "[w]here a party's procedural missteps do not affect the validity of the appeal, remand is not required." ***Id.*** (citation omitted).

Here, due to Appellants' failure to serve its notice of appeal on the trial court pursuant to Rule 906(a)(2), the trial court explained that it "only found out that there was an appeal in this matter when it received the Docketing Statement from the Superior Court." Rule 1925(b) Order, 3/2/21 (single, unnumbered page). Nonetheless, despite not being properly served with the notice of appeal, the trial court still managed to issue an order directing Appellants to file a Rule 1925(b) statement, and file a Rule 1925(a) opinion. While we admonish Appellants, again, for not complying with our Rules of Appellate Procedure, their noncompliance with Rule 906(a)(2) has not hindered our appellate review and, therefore, we will proceed to the merits of Appellants' issues.

## First Issue

In Appellants' first issue, they claim that the trial court "commit[ted] an error of law by divesting itself of subject matter jurisdiction in declaring and interest [*sic*] in an indispensable 3rd party[:] Tiberi's Inn, LLC[.]" Appellants' Brief at 5. They say that "Geno Tiberi and … Tiberi['s] Inn[,] LLC[,] are indispensable parties to the action because they have a joint interest in the subject matter of the litigation." ***Id.*** at 14. They contend that "[i]t is clear from the record at the hearing on the injunctive relief that Mr. … Tiberi played

- 7 -

an intricate role in the convoluted history of this case. There was an outstanding lien on the subject liquor license, [f]iled by the law [f]irm of Davis and Davis on behalf of Tiberi['s] Inn[,] LLC, without any testimony as to what was ever paid[,] if anything[,] and what might be currently owed." *Id.* at 13.[6] Appellants conclude that, "[b]y [Mr. Tiberi's] nature of property owner, and having [a] joint interest in the subject liquor license, Mr. … Tiberi is an indispensable third party." *Id.* at 9.

> With respect to indispensable third parties, this Court has explained:
>
> The failure to join an indispensable party to a lawsuit deprives the court of subject matter jurisdiction. Whether a court lacks jurisdiction due to the failure to join an indispensable party may be raised at any time or *sua sponte*. Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of our review plenary.
>
> With regard to whether a party is an indispensable party, this Court has explained the following:
>
>> [A] party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.[7] If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.

---

[6] *But see* N.T., 1/29/21, at 19 (Ms. Fischer's testifying that Mr. Tiberi told her that, as of June 19, 2020, $24,500 would pay off the lien). We note that the certified record does not contain the hearing transcript; however, it is included in the reproduced record and we will consider it. *See Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) (observing that "where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it") (citations omitted).

> 1. Do absent parties have a right or an interest related to the claim?
>
> 2. If so, what is the nature of that right or interest?
>
> 3. Is that right or interest essential to the merits of the issue?
>
> 4. Can justice be afforded without violating the due process rights of absent parties?
>
> > [7] A corollary of this principle is that a party against whom no redress is sought need not be joined. In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed.
>
> In determining whether a party is indispensable, the basic inquiry remains whether justice can be done in the absence of a third party.

In undertaking this inquiry, the nature of the claim and the relief sought must be considered.

*Hendricks v. Hendricks*, 175 A.3d 323, 328-29 (Pa. Super. 2017) (cleaned up).

> In addressing this claim, the trial court stated:
>
> Appellants' second issue on appeal is that this [c]ourt erred by "divesting itself of subject matter jurisdiction in declaring an interest in an indispensable 3rd party[:] Tiberi's Inn[,] LLC."
>
> First, this [c]ourt never divested itself of any jurisdiction in this matter. The issue of subject-matter jurisdiction was never even raised by [Appellants] at or before the [h]earing. Additionally, [Appellants'] second issue is somewhat nonsensical — if this [c]ourt had divested itself of subject-matter jurisdiction, then it would not have held a [h]earing on the matter.
>
> Second, this [c]ourt never "declared an interest in an indispensable third party." In fact, this [c]ourt never "declared an interest" in any party, and it is not apparent what [Appellants] mean by such a statement.

> In his closing argument at the [h]earing, [c]ounsel for [Appellants] argued that Mr. Tiberi was an indispensable party. To the degree that this is what [Appellants] are referring to here, this [c]ourt notes that: 1) [Appellants] never objected to any testimony regarding Mr. Tiberi, and 2) if they believed Mr. Tiberi was an indispensable party, [Appellants] could have called Mr. Tiberi to testify at the Hearing.

TCO at 9 (internal citation omitted).

Initially, we are equally confused by Appellants' assertion that the trial court "divest[ed] itself of subject matter jurisdiction in declaring and interest [*sic*] in an indispensable 3rd party[:] Tiberi's Inn, LLC." **See** Appellants' Brief at 5. Appellants do not cite to anywhere in the record where the trial court declared an interest in an indispensable third party, and our own review of the record reveals no such declaration from the trial court. As we are unsure what Appellants mean by this statement, we are unable to further address this specific facet of their claim.

To the extent that Appellants argue that Mr. Tiberi and/or his business, Tiberi's Inn, LLC, are indispensable parties to this litigation, we disagree. Looking at the considerations for determining if a party is indispensable, we conclude that justice can be afforded without violating the due process rights of Mr. Tiberi and/or Tiberi's Inn, LLC. We acknowledge that Tiberi's Inn, LLC has an interest related to the subject liquor license, and that the nature of that interest is in the form of a lien on the subject liquor license. However, Tiberi's Inn, LLC's interest is not essential to the merits of the issue before us, which concerns the agreement made between Ms. Fischer and Mr. Cummings to transfer the liquor license. Tiberi's Inn, LLC was not a party to the license

- 10 -

transfer agreement, and there was no evidence whatsoever indicating that its approval is required to transfer the liquor license. Accordingly, based on the record currently before us, we determine that Tiberi's Inn, LLC is not an indispensable party to this matter.

Nevertheless, in an abundance of caution, we vacate the part of the trial court's order directing Kickerz "to make a final payment of Twenty Four Thousand Five Hundred ($24,500.00) Dollars to Tiberi's Inn, LLC, a lienholder for said license." *See* Order, 2/1/21, at 2. Without hearing from Mr. Tiberi concerning what amount of money he believes is owed to him, we are hesitant to endorse that aspect of the trial court's order, as Mr. Tiberi may not agree with the $24,500 figure. Upon vacating that part of its order, the trial court should instead generally direct Kickerz to pay Tiberi's Inn, LLC, the remaining amount of money owed on the lien to facilitate the transfer.

**Second Issue**

In Appellants' second issue, they challenge the trial court's decision to grant the preliminary injunction. They argue that "the trial court commit[ted] an error of law and/or abuse[d] its discretion where no reasonable grounds exist for the trial court's finding that … Kickerz … established each of the essential prerequisites for the grant of the preliminary injunction[.]" Appellants' Brief at 5.

The preliminary injunction in this case is partly a mandatory preliminary injunction, in that it "commands positive acts" on the part of Appellants, namely, to transfer the liquor license to Kickerz. *See Greenmoor, Inc. v.*

- 11 -

***Burchick Const. Co., Inc.***, 908 A.2d 310, 312-13 (Pa. Super. 2006) (citation

omitted).[7]  This Court has explained:

> Generally, appellate inquiry is limited to a determination of whether an examination of the record reveals that "any apparently reasonable grounds" supports the trial court's disposition of a preliminary injunction request.  ***Summit Towne Centre, Inc. v. Shoe Show of Rocky Mt., Inc.***, … 828 A.2d 995, 1001 ([Pa.] 2003).  The standard of review differs, however, where, as here, the trial court has granted a mandatory preliminary injunction.  ***See id.***, note 7.  Such a remedy is extraordinary and should be utilized only in the rarest of cases.  ***See id.***, note 13.  Our Supreme Court has deviated from the general standard applicable to review of preliminary injunctions, *only* when reviewing the grant of a mandatory preliminary injunction.  ***See*** [***Mazzie v. Commonwealth***, 432 A.2d 985, 988 (Pa. 1981)].  The ***Mazzie*** Court explained:

>> Generally, preliminary injunctions are preventive in nature and are designed to maintain the *status quo* until the rights of the parties are finally determined.  There is, however, a distinction between mandatory injunctions, which command the performance of some positive act to preserve the *status quo*, and prohibitory injunctions, which enjoin the doing of an act that will change the *status quo*.  This Court has engaged in greater scrutiny of mandatory injunctions and has often stated that they should be issued more sparingly than injunctions that are merely prohibitory.  Thus, in reviewing the grant of a mandatory injunction, we have insisted that a clear right to relief in the plaintiff be established.

> As the above elucidates, in reviewing the grant of a mandatory preliminary injunction we must examine the merits of the controversy and ensure that "a clear right to relief in the plaintiff is established."

---

[7] We acknowledge that the injunction is also partly prohibitory, in that it enjoins Appellants from encumbering the liquor license and/or conveying it to any person or entity besides Kickerz.

*Greenmoor*, 908 A.2d at 313 (emphasis in original; brackets from original and some internal citations omitted).

With respect to preliminary injunctions, this Court has explained:

A petitioner seeking a preliminary injunction must establish every one of the following prerequisites:

First, a party seeking a preliminary injunction must show that an injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages. Second, the party must show that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings. Third, the party must show that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct. Fourth, the party seeking an injunction must show that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits. Fifth, the party must show that the injunction it seeks is reasonably suited to abate the offending activity. Sixth, and finally, the party seeking an injunction must show that a preliminary injunction will not adversely affect the public interest.

*Summit Towne Centre*, … 828 A.2d at 1001. If a petitioner fails to establish any one of the aforementioned prerequisites, a reviewing court need not address the others. *Id.*[]

*Greenmoor*, 908 A.2d at 313-14.

Here, Appellants complain that Kickerz "failed to establish that the failure to transfer the liquor license satisfies the first, second, fifth[,] and sixth elements for the injunctive relief granted." Appellants' Brief at 8. With respect to the first element, Appellants claim that Kickerz did not show that an injunction is necessary to prevent immediate and irreparable harm that cannot

- 13 -

be adequately compensated by damages. *See id.* at 10-11; *see also Greenmoor*, 908 A.2d at 313. This Court has stated that, "[i]n order to meet this burden, a plaintiff must present 'concrete evidence' demonstrating 'actual proof of irreparable harm.' The plaintiff's claimed 'irreparable harm' cannot be based solely on speculation and hypothesis." *Greenmoor*, 908 A.2d at 314 (citations omitted). Furthermore, "for purposes of a preliminary injunction the claimed harm must be *irreversible* before it will be deemed irreparable." *Id.* (emphasis in original; citation omitted).

Appellants argue that Kickerz did not establish this first prerequisite because Ms. Fischer "testified that Live[ W]ire Reloaded was open under limited capacity…[,] as a result of the mandate regarding COVID." Appellants' Brief at 11 (citation omitted).[8] Thus, they say that "[t]here is no way to

---

[8] Briefly, by way of background:

> On March 6, 2020, the Governor issued a Proclamation of Disaster Emergency … formally declaring a state of emergency in the Commonwealth of Pennsylvania … in response to the global pandemic caused by the novel coronavirus disease (COVID-19)…. Thereafter, the Governor implemented numerous orders in an effort to mitigate and stop the spread of COVID-19, including closing non-essential businesses, closing restaurants and bars for in-person dining, limiting the size of gatherings, and directing citizens to stay at home. In May 2020, a phased reopening of Pennsylvania's businesses began, with restaurants and bars reopening with increasing capacity once counties reached the "Yellow phase" and "Green phase."

*County of Allegheny v. Cracked Egg, LLC*, 2021 WL 3124248, at *1 (Pa. Cmwlth. July 23, 2021) (unpublished memorandum opinion) (citation omitted). Ms. Fischer testified that her county "went into the [Y]ellow [phase] on June 5th[. W]e were able to start having dine in and we have outside
*(Footnote Continued Next Page)*

- 14 -

determine what the loss would be, as the sole testimony provided was from [Ms.] Fischer who offered nothing more than speculation and conclusions regarding the financial stability of Live[ W]ire Reloaded or the potential for Kickerz….” *Id.*

This argument is unconvincing. Regardless of the business's profitability while facing temporary restrictions during the COVID-19 pandemic, it cannot be seriously questioned that Ms. Fischer's bar/restaurant would suffer a loss if it was unable to sell alcohol. As the trial court observed:

> Mr. Cummings's actions in agreeing to sell Ms. Fischer the liquor license and then not following through with the sale essentially barred Ms. Fischer from operating her establishment…. Ms. Fischer testified that the establishment was set up specifically as a bar, and that she needs the liquor license in order to stay in business. After Mr. Cummings related that he intended to transfer the liquor license to another location, Ms. Fischer lost the ability to sell alcohol at her bar and began losing profits as a result of Mr. Cummings's actions.
>
> Further, Ms. Fischer testified that if Mr. Cummings transferred the liquor license to a different location in another township, then there would be a five-year period during which the license could not be transferred back to where her establishment is located. This [c]ourt believed that the [p]reliminary [i]njunction in this matter was necessary to stop that from happening.
>
> The continued delay of transferring the liquor license to Ms. Fischer would clearly result in damage that cannot be estimated in an accurate pecuniary standard. That damage was therefore immediate and irreparable, and Ms. Fischer satisfied the first prerequisite.

TCO at 5-6 (internal citations omitted).

_____

seating available[,] so we built a patio … and were able to accommodate people outside.” N.T. at 23.

Appellants' argument does not persuade us to depart from the trial court's reasoning. Kickerz's inability to sell alcohol, the unavailability of other licenses, and the possibility that Appellants would transfer the liquor license to another municipality support the trial court's finding of immediate and irreparable harm that cannot be adequately compensated by monetary damages. *See* N.T. at 48 (Ms. Fischer's explaining that "[w]ith the location and the way it was set up, that's the only way for me to make money is to also offer liquor at that location"); *id.* at 49 (Ms. Fischer's stating that, "I purchased for quite a few thousand dollars an asset that I can't use right now nor can I proceed with it, and I can't make the money at this location based off of just a restaurant. It wasn't set up that way"); *id.* (Ms. Fischer's noting that liquor licenses are limited in number); *id.* at 50 (Ms. Fischer's testifying that her business "can't sustain itself as just a restaurant for the amount that we're paying for the lease and the fixtures[,]" and conveying that she already has "a lease with the equipment and the building with Mr. Tiberi for 60 months of … payment"); *id.* (Ms. Fischer's sharing that "[i]t's been very, very difficult. I've had to mortgage my home"); *id.* at 60-61 (Ms. Fischer's saying that, at the end of 2020, she looked into purchasing another liquor license but none were available). Accordingly, we agree with the trial court that Kickerz established the first prerequisite.

Appellants next contend that Kickerz did not satisfy the second and fifth prerequisites. *See Greenmoor*, 908 A.2d at 313 (requiring as the second prerequisite that "the party must show that greater injury would result from

refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings[,]" and the fifth prerequisite as "the party must show that the injunction it seeks is reasonably suited to abate the offending activity").

In addressing the second and fifth prerequisites, the trial court explained:

> Here, Ms. Fischer's business cannot operate as she intended if the [i]njunction was not granted. Ms. Fischer testified that her business … was designed to operate as a bar and that she agreed to purchase the liquor license from Mr. Cummings for that purpose. Ms. Fischer also testified that Kickerz … lost profits last year as a result of Mr. Cummings['s] refusing to follow through with the deal he entered into and transferring the liquor license to Ms. Fischer. If the [i]njunction was refused, Ms. Fischer would have continued to operate her business at a loss, and she also would not have been in possession of that which she is entitled to by contract — the liquor license. As a result, this [c]ourt found that Ms. Fischer satisfied the second prerequisite.
>
> ***
>
> In granting the preliminary injunction, this [c]ourt ordered Mr. Cummings to transfer the liquor license to Ms. Fischer. This injunction is reasonably suited to abate the offending activity.

TCO at 6-7, 8.

In attacking the trial court's analysis, Appellants aver that "[t]he second and fifth requirements are not satisfied because the [t]rial [c]ourt's [o]rder caused greater injury and was not reasonably suited to abate offending activity because it effectively acted as a permanent injunction by awarding the liquor license to [Kickerz] and payment to a third party that was not part of the litigation." Appellants' Brief at 12 (citation omitted). They insist that

"[a] court may not treat a hearing for a preliminary injunction as a final hearing and as a basis for a permanent injunction, unless the parties stipulate to the contrary." *Id.* (citation omitted).

We reject this underdeveloped argument from Appellants. To begin with, we agree with the trial court that greater injury would result from refusing the injunction, as it would have caused Kickerz to continue operating without the liquor license and losing money. Moreover, Appellants do not outline the specific ways that they have been harmed by the issuance of the preliminary injunction, and they do not contend that the liquor license could not be transferred back to them if they were to ultimately prevail on the merits. We also determine that the injunction is reasonably suited to abate the offending activity, that is, Appellants' withdrawing their application to transfer the liquor license and precluding Kickerz from using the license to serve alcohol. Thus, given the meager arguments advanced by Appellants, no relief is due on this basis.

Finally, Appellants claim that Kickerz did not satisfy the sixth prerequisite, which is that a preliminary injunction will not adversely affect the public interest. *See Greenmoor*, 908 A.2d at 313. Appellants aver that "it appears that the parties were attempting, by structuring their transaction as they did, to commit fraud." Appellants' Brief at 12 (citing Ms. Fischer's testimony that Mr. Cummings "didn't want some of [her payments] written in checks[,]" and that Mr. Cummings wanted to structure the deal so that he did not owe as much in taxes and would receive some of the money sooner).

Appellants say that "[a] party who invokes the court's equitable powers asks the court to enforce the requirements of conscience and good faith. [Kickerz] must therefore come to the court with clean hands, and [it] cannot expect the court to enforce a transaction that offends the court's conscience." *Id.*

We deem this argument waived. Appellants do not show us where they advanced this specific fraud claim below, and our review of the record does not indicate that they raised it before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information."); *see also* Kickerz's Brief at 15-16 (arguing that Appellants make this claim for the first time in their appellate brief). Thus, no relief is due on this basis either.

In sum, Appellants have not demonstrated that Kickerz failed to establish an essential prerequisite for the grant of the preliminary injunction, and their second issue fails. We therefore affirm the trial court's grant of the preliminary injunction, aside from the part of its order directing Kickerz to pay $24,500 to Tiberi's Inn, LLC, as stated *supra.*

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/12/2021