J-A15025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| REBECCA L. HENN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID J. CELENTO | : | |
| | : | |
| Appellant | : | No. 45 MDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of Centre County
Civil Division at No:  2019-3207

BEFORE:   BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                **FILED: SEPTEMBER 26, 2025**

David J. Celento ("Father") appeals *pro se* from the January 7, 2025 final custody order awarding him, *inter alia*, partial physical custody of his nearly nine-year-old son, V.C.  Within this appeal, Father challenges the trial court's September 4, 2019 interim custody order.  After careful review, we dismiss the appeal as moot.

The certified record reveals that Rebecca L. Henn ("Mother") initiated the underlying custody action on September 4, 2019, along with a divorce action, at which time V.C. was three years old.  A major point of contention which led to the parties' separation was whether they would reside with V.C. in Pittsburgh or State College.  **See** N.T., 3/26/24, at 41-42, 47-49, 51, 121, 160, 167.  In 2008, the parties began residing together in State College, at

---

[*] Former Justice specially assigned to the Superior Court.

which time they were both employed as professors at Pennsylvania State University ("PSU"). *See id.* at 11, 156. In 2015, Mother attained tenure, but Father was fired by PSU around 2012, and he has remained largely unemployed. *See id.* at 12, 86, 156. Father returned to the parties' Pittsburgh home in August of 2019, which is a driving distance from State College of approximately two and one-half hours. *See id.* at 172, 182.

On the same date that Mother filed the custody action, the Honorable Katherine Oliver issued the first interim order, which provided as follows:

> Until further order of court, the parties shall share legal custody and Mother shall have primary physical custody of the child, subject to every other weekend from Friday at 5:30 p.m. to Monday at 10:00 a.m. (commencing September 13, 2019) and every Wednesday from 5:30 p.m. to 8:00 p.m. with Father.

Order, 9/4/19 (cleaned up) ("first interim order"). In addition, the order scheduled a custody conciliation conference for October 14, 2019.[1]

---

[1] During the protracted custody litigation in this case, Judge Oliver eventually recused herself based upon Father's request. *See* Opinion and Order, 3/20/20. It is important to note that a custody trial first commenced in September of 2020,which was presided over by Judge Jonathan D. Grine, but was never completed due, in part, to Judge Grine recusing himself *sua sponte*. *See* Order, 4/21/21. Thereafter, President Judge Pamela Ruest, the third assigned judge, **recused the entire Centre County Common Pleas Court** upon Father's motion and ordered a senior judge to be appointed in the underlying matter. *See* Order, 6/25/21. Subsequently, the Honorable Stewart Kurtz, S.J., was appointed and scheduled the trial but continued it at the requests of Father. *See generally* Certified Docket. Judge Kurtz denied two motions for his recusal filed by Father. *See id.* However, as a senior judge, Judge Kurtz's tenure ended in December of 2022 without him presiding over a custody trial. *See* Trial Court Opinion, 2/7/25, at 3. Ultimately, the Honorable Kevin Hess, S.J., presided over the subject proceedings.

Mother attended the conciliation conference as scheduled with counsel, and Father attended *pro se*. Following the conference, on October 29, 2019, the court issued another interim order which maintained the awards of shared legal custody and primary physical custody in Mother subject to Father's partial physical custody on alternating weeks from Wednesday at 7:00 p.m. through Sunday at 5:30 p.m. **See** Interim Order, 10/29/19. At the time that the subject custody trial commenced, the parties were exercising custody awards pursuant to this order.

The evidentiary custody trial in the underlying matter finally commenced on March 26, 2024, at which time V.C. was eight years old and in second grade. Mother and Father were represented by counsel.[2] The parties both testified. Father also presented the testimony of Mardi Dunklebarger, his landlord of a property in State College, where he resided part-time. The court concluded the hearing on this date.

On April 2, 2024, prior to the court issuing a ruling, Father filed a counseled motion to present additional testimony. The court granted the motion and scheduled a hearing for July 17, 2024. In addition, the court issued an order solely with respect to the summer of 2024, wherein it awarded the parties shared physical custody on a "week on/week off" basis. Order, 5/2/24.

---

[2] Father was represented by Thomas Dickey, Esquire, at the first hearing and Terry Despoy, Esquire, at the second hearing.

On July 17, 2024, the parties testified again. Father requested shared physical custody.[3] **See** N.T., 7/17/24, at 96. Father also presented the testimony of Mia Celento, his sister, and Leslie Scheunemann, his paramour. Further, the parties collectively proffered 25 exhibits.

Following the hearing, on September 4, 2024, the trial court entered an order maintaining the custody awards from the October 29, 2019 interim order, *i.e.*, awarding the parties shared legal custody; Mother primary physical custody; and Father partial physical custody during the school year. **See** Interim Order, 9/4/24; Trial Court Opinion, 9/4/24. In addition, the court maintained the current custody schedule "pending the receipt of" the parties' proposed schedules for Father's partial custody. Interim Order, 9/4/24. Importantly, the court accompanied this order with an opinion, which thoroughly assessed the statutory factors set forth in 23 Pa.C.S.A. §5328(a). **See** Trial Court Opinion, 9/4/24.

Thereafter, by order dated November 4, 2024, and entered on November 5, 2024, the trial court again set forth the aforementioned custody awards for the school year and also awarded the parties shared physical custody for the summer. **See** Order of Court, 11/5/24. In addition, the order

---

[3] At the outset of the first day of the custody hearing, Father's counsel stated that Father was requesting primary physical custody of V.C. and shared physical custody in the alternative. **See** N.T., 3/26/24, at 6. However, during the second day of the hearing, Father did not request an award of primary physical custody. **See** N.T., 7/17/24, at 95-96. Rather, he requested shared physical custody. **See id.**

set forth Father's custody schedule to include alternating weekends from Friday at 3:00 p.m., until Sunday at 3:00 p.m. during the school year, and alternating weeks during the summer. *See id.* Finally, the court set forth a holiday schedule. *See id.*

However, the court issued the November 5, 2024 order before Father had filed his proposed custody schedule. On November 21, 2024, Father filed *pro se* an emergency motion wherein he requested, *inter alia*, that the court vacate its November 5, 2024 final order.[4] *See* Emergency Motion, 11/21/24. By order dated November 25, 2024, the court granted Father's motion, in part, to permit him to file his proposal for a partial physical custody schedule within twenty days.[5] *See* Order, 11/25/24, at 1-2 (unpaginated). Father did not comply with the order.

By final custody order dated December 19, 2024, and entered on January 7, 2025, the trial court made final the November 5, 2024 order without modification. On January 7, 2025, Father timely filed *pro se* a notice of appeal and a contemporaneous concise statement of errors complained of

_____

[4] Per the requests of Father's counsel, Attorneys Dickey and Despoy, the court granted their withdrawal from representation on September 27 and October 2, 2024, respectively.

[5] On December 3, 2024, Father filed an appeal from the November 25, 2024 order, which was docketed in this Court at 1782 MDA 2024. This Court quashed the appeal *sua sponte* on January 31, 2025, because it was not taken from a final, appealable order. *See Rebecca L. Henn v. David J. Celento* (1782 MDA 2024).

- 5 -

on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[6]  The trial court filed

its Rule 1925(a) opinion on February 7, 2025.

On appeal, Father presents the following issues for our review:

1. Whether the trial court constitutionally erred at inception, when restricting [Father]'s fundamental parental right of custody without cause, without notice, and without opportunity to be heard following receipt of a prohibited *ex parte* petition and, absent cause shown or rights restored, could not justly proceed?

2. Whether, in light of **Com**[**monwealth**] **v. Starr**, 664 A.2d 1326, [] (Pa. 1995), a restrictive holding of a fundamental parental right without required procedural and substantive due process of law meets the definition of an "exceptional circumstance" and, in order to justly proceed, a subsequent coordinate level trial judge would be permitted and required to either show cause or restore [Father]'s parental rights as "the prior holding was clearly erroneous and would create a manifest injustice if followed"?

3. Whether the bright-line thresholds for appeal established by case precedent which never involved nor contemplated the deprivation of required due process of law for fundamental parental rights, would these thresholds be inapt and improperly applied to refuse appeal for matters in which said rights were required but deprived?

---

[6] Father's concise statement incorporates the issues from his concise statement filed in his appeal at 1782 MDA 2024.  In her appellee brief, Mother does not assert that she was prejudiced by Father's failure to file a separate concise statement in this appeal.  **See generally** Mother's Brief.  We note that Father presents the same issues in this appeal as in 1782 MDA 2024, which also related to the first interim order.  In addition, the trial court filed a Rule 1925(a) opinion in this appeal, wherein it addressed Father's issues raised in this appeal due to the court's familiarity with Father's issues which have remained the same throughout the underlying matter.  Therefore, we review Father's claims.  **See In re deLevie**, 204 A.3d 505, 511 (Pa. Super. 2019) (this Court liberally construes *pro se* filings).

Father's Brief at 8-9 (some emphasis omitted).

Our standard of review of custody orders is well-settled:

Our standard of review over a custody order is for a gross abuse of discretion. Such an abuse of discretion will only be found if the trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record.

In reviewing a custody order, we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the trial court who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Rogowski v. Kirven*, 291 A.3d 50, 60-61 (Pa. Super. 2023) (internal citations and punctuation omitted).

With respect to custody cases, the primary concern is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

The Child Custody Act sets forth sixteen factors at 23 Pa.C.S.A. § 5328(a) that a court must consider prior to modifying an existing custody

order.[7]  We have explained, "It is within the trial court's purview as the finder

of  fact  to  determine  which  factors  are  most  salient  and  critical  in  each

---

[7] Section 5328(a) sets forth the following best interest factors that the court must consider when awarding custody:

**§ 5328.  Factors to consider when awarding custody**

**(a)  Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can  better  provide  adequate  physical  safeguards  and supervision of the child.

(2.1)  The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)  The parental duties performed by each party on behalf of the child.

(4)   The  need  for  stability  and  continuity  in  the  child's education, family life and community life.

(5)  The availability of extended family.

(6)  The child's sibling relationships.

(7)  The well-reasoned preference of the child, based on the child's maturity and judgment.

*(Footnote Continued Next Page)*

particular case." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013).

Further, trial courts must set forth a discussion of the Section 5328(a) factors

"prior to the deadline by which a litigant must file a notice of appeal." ***A.V. v.***

***S.T.***, 87 A.3d 818, 820 (Pa. Super. 2014).

---

(8)  The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)  Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10)  Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11)  The proximity of the residences of the parties.

(12)  Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13)  The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14)  The history of drug or alcohol abuse of a party or member of a party's household.

(15)  The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S.A. § 5328(a).  Our General Assembly amended Section 5328(a) on April 15, 2024, and again on June 30, 2025.  Neither amendment applied in this case.  ***See C.R.F. v. S.E.F.***, 45 A.3d 441, 445 (Pa. Super. 2012) (concluding that provisions of the Act apply "if the evidentiary proceeding commences on or after the effective date of the Act[.]").

Here, the trial court thoroughly considered the requisite statutory factors and weighed none of them in Father's favor. *See* Trial Court Opinion, 9/4/24. The court found determinative Section 5328(a)(1), (4), (8), (10), and (13). *See id.*

On appeal, Father's issues are interrelated and concern only the first interim order. *See* Father's Brief at 13-27. Father does not raise an issue with respect to the January 7, 2025 final custody order.

Specifically, Father claims on appeal that the trial court violated his guarantee of due process under the Fourteenth Amendment to the United States Constitution by issuing the first interim order without providing notice or an opportunity to be heard. *See id.* at 19-25. Further, Father argues that the Common Pleas judges involved in the underlying custody matter erred to the extent that they relied upon the "coordinate jurisdiction rule" in denying his requests to vacate the first interim order. *Id.* at 25-26. Finally, Father asserts that he was prejudiced by this Court quashing his appeal at docket number 1782 MDA 2024, discussed above. *See id.* at 26-27. Father requests that every order entered in the underlying custody matter be declared "void *ab initio*" and that the case must be relitigated *de novo*. *Id.* at 20-21; 29-30.

Initially, we must consider whether the first interim order was mooted by the entry of the January 7, 2025 final custody order, which was entered following a full evidentiary trial. This Court has concluded that we "may *sua sponte* raise the issue of mootness, as we generally 'cannot decide moot or

abstract questions, nor can we enter a judgment or decree which effect cannot be given.'" ***E.B. v. D.B.***, 209 A.3d 451, 461 (Pa. Super. 2019) (citation omitted); ***see also Fetzer v. Fetzer***, 336 A.3d 1058, 1064 (Pa. Super. 2025) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

In her appellee brief, Mother argues that the first interim order has "long since been rendered moot" by subsequent interim orders and especially by the final custody order. Mother's Brief at 6-8. We agree. Indeed, the final custody order superseded all prior interim orders in this case.

It is important to note that the record does not reveal the trial court's reasoning for entering the first interim order without notice or a hearing.[8] Without an explanation, we cannot express an opinion as to whether the first

---

[8] This Court has explained:

> The Child Custody Act grants trial courts authority to enter into orders on an interim basis, providing that the court "may issue an interim award of custody to a party who has standing … in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters." In relevant part, the rule governing special relief provides that "[a]t any time after commencement of the action, the court may on application or its own grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody[.]" The official comment explains that the rule is intended to be a "broad provision empowering the court to provide special relief where appropriate."

***E.B.***, 209 A.3d at 463 (citations omitted). However, the panel emphasized that due process is still required even when exercising this special relief power. ***See id.***

- 11 -

interim order violated Father's guarantee of due process. Nevertheless, even if we were to agree with Father that his due process rights were violated, we would not be able to grant him relief. *See E.B.*, 209 A.3d at 466-67 (concluding that "the relief that the father seeks is impossible to achieve. The father asks us to vacate the interim order, effectively re-setting the clock back. . . . This is tantamount to 'unringing the bell' and rewinding the last two years of the child's life as if they never happened."). Simply put, because the final custody order superseded the first and **all** interim orders in the underlying custody matter, any relief we would grant Father would not have legal force or effect. *See Fetzer*, 336 A.3d at 1064.

Appeal dismissed as moot.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/26/2025